## Diaz *v.* Jones & Laughlin Steel Corporation, Appellant.

Argued April 28, 1944. Before KELLER, P. J., BALDRIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J., absent).

*William A. Challener, Jr.,* with him *William A. Challener,* for appellant.

*Samuel G. Wagner* of *Wagner & Wagner,* with him *Coleman Harrison,* for appellee.

OPINION BY KELLER, P. J., July 15, 1944:

The claimant, a painter in the employ of the defendant company for fifteen years, on May 14, 1941, received an injury to his left eye, through some paint which was sprayed into it by a fellow workman, which disabled him from working for seven weeks and required the removal of the eye.

At the hearing upon his claim petition, he proved, to

the satisfaction of the compensation authorities, his employment, the injury to his eye, his inability to work as a result of the injury for seven weeks, and his permanent loss of the eye by its surgical removal. He thus made out a prima facie case for an award of compensation, for the permanent loss of his left eye, of sixty-six and two-thirds per centum of his wages for 125 weeks, under section 306(c) of the Workmen's Compensation Act of June 21, 1939, P. L. 520, which was in force when he was injured.

It developed at the hearing, although it had not been set up in the defendant's answer, that claimant had had a somewhat similar, though much less severe, accident in 1933 while in defendant's employ, and that his left eye had then been injured by some paint getting into it; and that he also had a condition known as Aphakia Cyclitis affecting that eye. Two doctors testified as experts—one for the claimant and one for the defendant—and were examined with respect to the condition of that eye prior to the accident of May, 1941, and defendant's counsel, by his questioning of them and of the claimant, undertook to establish that even before the 1941 accident, claimant had lost the use of his left eye *for industrial purposes;* that his left eye, by itself and without the use of the right eye, did not give him "industrial vision"; and *it was claimed* that he was not entitled to compensation under section 306(c) for the loss of the use of an eye that was not useful for industrial vision, but only for compensation under section 306(a) for the seven weeks during which he was actually disabled.

The referee and, on appeal, the board adopted this view and awarded claimant compensation for seven weeks' disability, but disallowed his claim for compensation for 125 weeks for the permanent loss of his eye, under the schedule in section 306(c). Claimant appealed to the court of common pleas, which ordered the record back to the board, with directions that a further

inquiry be made as to (1) the injury of the left eye sustained by the claimant in 1933 while in the employ of this defendant; (2) the nature of the impairment of vision of the left eye, if any, which the claimant sustained prior to 1933; (3) the effect of the eye disease, 'aphakia cyclitis', upon the left eye from 1933 and until the accident of 1941; and (4) the compensation, if any, paid the claimant as a result of the eye injury of 1933. The court scrupulously refrained from expressing any opinion on the facts calculated to influence the board, but was not satisfied that the facts in evidence justified the order of the board. The defendant company appealed.

We are of opinion that, on the facts in this record, the order of the court below is not appealable; it is not such a judgment as can be presently appealed from (sec. 427) ; but, as the case will come before the board again and there were manifest errors in its treatment and consideration of it, we deem it advisable to refer to them in order to prevent their recurrence; but we expressly disclaim any intent to trespass upon the board's fact-finding functions.

The fourth subject of inquiry in the court's order has been resolved by the frank admission of the present counsel for defendant that no compensation whatever was paid claimant because of the injury to his left eye in 1933. The materiality of the inquiry would be evident, if defendant company had paid claimant compensation for the loss of the use of that eye in 1933, for he could not twice ask for compensation for the loss of the same eye.

At the outset, we may say that the board—as appears from its opinion—misunderstood the situation with respect to the burden of proof as to the condition of claimant's eye from 1933 up to the accident in 1941, and the quantum of proof required in this case. It was apparently under the impression that a burden rested on the

claimant to prove, to its satisfaction, as a part of his case, that his left eye, by itself, had *industrial vision,* or was useful for *industrial purposes,* at the time it was injured by the paint spray from his fellow workman's gun or sprayer. For in referring to the testimony of the physicians, called as experts, it said: "We do not base this opinion solely upon the proof of impairment of vision in that eye, but also on the ground that the eye was *useless in the claimant's work* prior to the accident. Dr. Brown [claimant's witness] testified that the claimant 'could probably' do rough painting with the *sole vision of the left eye* before the accident. This testimony falls below the required standard of proof. Elonis v. Lytle Coal Co., 134 Pa. Superior Ct. 264 [3 A. 2d 995]. On the other hand [defendant's witness] Dr. Markel's testimony was positive to the effect that the claimant *could not do the work with the sight of the left eye alone.* Under the testimony, it seems clear that the claimant had no *industrial use* of his left eye prior to the accident, *within the meaning of the Workmen's Compensation Act,* and, accordingly he suffered no compensable loss when the physical eye was removed." (Italics supplied). The *Elonis* case is not relevant on the point under discussion. It relates to the sufficiency of medical testimony necessary to establish the causal connection between the accident and the claimant's disability, and holds that the physician must testify that *in his professional opinion* the resulting disability came from the alleged cause. No such issue was here before the board. The claimant's left eye was unquestionably removed because of the injury of May 1941. We have already pointed out that the claimant made out a prima facie case as to the permanent loss of his left eye, by proving its surgical removal as a result of the injury of 1941. This, unless its effect was overcome by other evidence, would entitle claimant to 125 weeks compensation. If the employer sought to overcome that prima facie case for

compensation by proof that the eye so removed, was, even before the injury requiring its removal, so permanently useless as an organ of sight as to be equivalent to the loss of the eye, the burden was on it to prove it, not on the claimant to disprove it. The defendant's answer contained no averment on the subject, and the evidence which it adduced, apparently with that end in view, fell short of the necessary proof in two respects: First, as before stated, the questions asked by counsel who represented the employer at the hearings before the referee were directed to an attempt to show that the claimant had previously lost the use of his left eye for *industrial purposes*.[1]

As a result of this method of examination the referee found as a fact (8th finding): "Your referee believes and so finds as a fact that the claimant did not have *industrial vision* of the left eye prior to May 14, 1941 ......". And the board affirmed the referee's findings of fact.

Now the question to be decided by the referee, and ultimately by the board, was not whether claimant had previously, permanently lost the use of his left eye for *industrial purposes*,—that is, that it did not have *industrial vision*—but whether he had permanently lost its use for *all practical intents and purposes*.

---

[1] Cross-examination of Dr. Brown by Mr. Painter, counsel for defendant: "Q. Would you say that a man who had a vision of 10/200, as you found it in his eye, had or had not lost the *industrial use* of the eye?" (p. 24a). *Question repeated.* "A. On the *general labor market* he would not have *industrial vision,* in my opinion." (p. 25a). Direct examination of Dr. Markel by Mr. Painter. "Q. What would you say as to whether or not, at the time of your examination in 1933, he had *useful industrial vision* in the left eye? A. He would not have. He had 10/200." (p. 29a).

By the formula, 10/200, is meant that with his left eye claimant had to be only 10 feet away in order to see objects which with entirely normal vision he could see 200 feet away. The formula for claimant's right eye was 20/30.

The amendment of June 4, 1937, P. L. 1552, had changed the Workmen's Compensation Act of 1915, P. L. 736, by providing that permanent loss of the use of an eye *for industrial purposes* should be considered as the equivalent of the permanent loss of the eye. But the Act of 1939, P. L. 520, which governs this case, struck out the words "for industrial purposes", and restored the clause, in that respect, to the language of the original act, which had been correctly interpreted by Judge HORACE STERN (now a Justice of the Supreme Court) when he was on the common pleas bench, to mean, not the permanent loss of the use of the eye *for industrial purposes,* but the permanent loss of its use *for all practical intents and purposes.*[2]

Secondly, counsel for the employer also persisted in asking the witnesses, as bearing on the permanent loss of the use of the left eye, whether claimant had sufficient vision in the left eye, prior to 1941, to do industrial work and paint, if *he had no vision in the right eye.*[3]

That was not the criterion. The standard was not, whether, before the accident in 1941, *with the right eye gone,* he could see sufficiently with the left eye to do

[2] See *Quinn v. American Int. Ship Bldg. Corp.,* 77 Pa. Superior Ct. 304, 306.

[3] Cross-examination of Dr. Brown by Mr. Painter: "Q. Assuming that the vision of the left eye in 1939, the date of your examination, was 10/200 would you say that is sufficient vision to do industrial work and paint if he had no vision in the right eye?" (23a). Objection by Mr. Harrison. Mr. Painter withdraws the question and asks, "Q. Do you think that if the vision in the left eye was as you found it, 10/200, he would be able to do painting if he had no vision in his right eye? ...... Assuming that he had no vision in the right eye would he with the vision left in the left eye, would he be able to paint ...... the sides of buildings, and walls and smoke stacks? A. It would be very rough. He could do it probably." (24a). Direct examination of Dr. Markel by Mr. Painter: "Q. What would you say as to whether or not, if he lost the right eye, he would be able to engage in the work of a painter? A. He would not have enough vision."

his work as a painter; but, whether *using both eyes* he had better general vision than he would have with only the right eye. In other words, could he see better, in general, using the left eye in connection with his good right eye than by using the right eye alone? If he could, he had not lost the use of his left eye to such an extent as to be considered the equivalent of the permanent loss of the eye.

On this point Dr. Brown had testified that the left eye had been of help to the claimant, in that "it gave him protected vision" (p. 22a); and the claimant had testified that he couldn't see as well out of his left eye as out of his right eye, *but he could see to do his job.* (p. 27a).

This improper examination was reflected in the board's opinion, where reference was made to the above questions as to the claimant's ability to work if he had no vision in his right eye or lost the right eye. (pp. 39a-40a).

The employer's approach to the case was wrong, and this affected the compensation authorities' consideration and decision of the issues, to the disadvantage of the claimant; and fully justifies the return of the record to the board for hearing, consideration and determination freed of the errors above pointed out.

This case is not controlled by our decision in *Quinn v. American Int. Ship Bldg. Corp.,* 77 Pa. Superior Ct. 304. In that case the parties had agreed and stipulated (p. 305) that the claimant had "practically lost the sight of one eye" when he was 14 years old, "the amount of vision retained being only sufficient to distinguish light from darkness." Our decision rested upon the facts so agreed and stipulated by the parties.

The appeal is dismissed—appellant to pay the costs on appeal.