Diaz *v.* Jones and Laughlin Steel Corporation,
Appellant.

Argued April 16, 1952. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*William A. Challener, Jr.,* with him *Alexander L. McNaugher* and *Robert H. Strub,* for appellant.

*Max O. Siegel,* with him *Coleman Harrison,* for appellee.

OPINION BY DITHRICH, J., May 26, 1952:

In this workmen's compensation case, which has been shifted from pillar to post for eleven years and is now before this Court for the second time, the learned court below reversed the decision of the board and awarded claimant compensation. Claimant, a painter, alleged that on May 14, 1941, he suffered an accidental injury in the course of his employment which required the removal of his left eye. Referee Curtis, to whom the claim was first referred, awarded compensation for seven weeks' disability but, having found as a fact that the claimant did not have industrial vision of the left eye prior to May 14, 1941, refused compensation for the permanent loss of the eye under the schedule in §306(c) of The Workmen's Compensation Act, as amended by the Act of June 21, 1939, P. L. 520, 77 PS §513. On appeal by claimant the decision was affirmed by the board.

Claimant then appealed to the Court of Common Pleas of Allegheny County which referred the claim back to the board "with directions that a *further* inquiry be made as to (1) the injury of the left eye sustained by the claimant in 1933 while in the employ of the Jones & Laughlin Steel Corporation; (2) the nature of the impairment of vision of the left eye, if any, which the claimant sustained prior to 1933; (3) the effect of the eye disease 'Aphakia cyclitis' upon the left eye from 1933 and until the accident of 1941, and (4) the compensation, if any, paid the claimant as a result of the eye injury of 1933." (Emphasis added.) The defendant company appealed to this Court which

held that the order of the Common Pleas Court was not appealable. *Diaz v. Jones & Laughlin Steel Corp.*, 155 Pa. Superior Ct. 177, 38 A. 2d 387.

However, the Court, in order to prevent their recurrence, referred to manifest errors in the board's treatment and consideration of the case relating to (1) the burden of proof, (2) the question involved, and (3) the standard to be applied in determining if the claimant had lost the use of his left eye to such an extent as to be considered the equivalent of the permanent loss of the eye. KELLER, P. J., in an opinion dismissing the appeal, said with respect to the burden of proof (pp. 181, 182) : ". . . the claimant made out a prima facie case as to the permanent loss of his left eye, by proving its surgical removal as a result of the injury of 1941. . . . If the employer sought to overcome that prima facie case for compensation by proof that the eye so removed, was, even before the injury requiring its removal, so permanently useless as an organ of sight as to be equivalent to the loss of the eye, the burden was on it to prove it, not on the claimant to disprove it." He further stated (p. 182) that "the question to be decided by the referee, and ultimately by the board [in view of the amendment of 1939, supra], was not whether claimant had previously, permanently lost the use of his left eye for *industrial purposes,*—that is, that it did not have *industrial vision*—but whether he had permanently lost its use for *all practical intents and purposes.*" The standard, as set forth in the opinion of the former President Judge (pp. 183, 184), to be applied in deciding that question, is "not, whether, before the accident in 1941, *with the right eye gone*, he could see sufficiently with the left eye to do his work as a painter; but, whether *using both eyes* he had better general vision than he would have with only the right eye. In other words, could he see better, in general, using the left eye in connection with his good

right eye than by using the right eye alone? . . . The employer's approach to the case was wrong, and this affected the compensation authorities' consideration and decision of the issues, to the disadvantage of the claimant; and fully justifies the return of the record to the board for hearing, consideration and determination freed of the errors above pointed out."

Although that opinion was filed July 15, 1944, for some unexplained and undisclosed reason the record was not remitted to the board from the court below until October 29, 1946. On November 13, 1946, it was referred to Referee Curtis for further hearing. Hearings were held before him on February 4, 1947, and December 7, 1948, and additional testimony taken. Shortly after the final hearing Referee Curtis died and on April 9, 1949, by agreement of the parties, the record was assigned to Referee Gibb for final disposition. Although Referee Curtis did not make a specific finding of fact that claimant sustained injuries by accident on May 14, 1941, he did "find as a fact that as a result of the aforementioned accident, the claimant became totally disabled on May 19, 1941 and continued as such for a period of seven weeks . . ."; and concluded that "Since the claimant has met the burden of proof upon him to show that he sustained accidental injuries while in the course of his employment with the defendant on May 14, 1941 . . ., he is entitled to recover compensation" and awarded compensation for a period of seven weeks. But after the record had been referred to Referee Gibb, he, notwithstanding the aforesaid finding and conclusion of Referee Curtis, found "as a fact that the claimant *did not sustain injuries by accident* while in the course of his employment with the defendant on May 14th, 1941 as alleged"; and further found "as a fact that . . . claimant had suffered loss of vision of his left eye for all practical in-

tents and purposes prior to May 14th, 1941," and thereupon dismissed the claim. (Emphasis added.)

Claimant was forced to again appeal to the board. The board set aside the referee's findings of fact, conclusions of law and order of dismissal "for the reason that the sole duty of the referee was to make findings of fact pursuant to the order of the Court of Common Pleas of Allegheny County dated July 6, 1943." The board, however, in its substituted findings of fact found that claimant "had suffered the permanent loss of use of the left eye for all practical intents and purposes." Exceptions filed by claimant to the findings of fact by the board were dismissed and the "record . . . remitted [sic] to the County Court of Allegheny County . . . for further disposition in accordance with the opinion of the Court of Common Pleas of Allegheny County dated July 6, 1943," on the mistaken theory that since jurisdiction had lodged in the County Court in workmen's compensation cases under the provisions of the Act of May 27, 1943, P. L. 691, §1, 77 PS §872, the record should be returned to that court. The cause was thereby further delayed until the record could be returned by the County Court to the board "in order that said board may make proper return of its responsive answers to the queries of the Court of Common Pleas of Allegheny County, where an appeal in the instant case is still pending." The case eventually got back to the Court of Common Pleas and that court, in an opinion by WEISS, J., set aside the findings of fact, conclusions of law and order of the board and "ordered that compensation be paid to the claimant . . . for a period of 125 weeks for the permanent loss of his left eye." This second appeal was then brought by the employer.

The principal question now before us is whether there is sufficient competent evidence to sustain the finding of the board that claimant, prior to the date of the accident in 1941, "had suffered the permanent

loss of use of the left eye for all practical intents and purposes, and using both eyes . . . had no better vision than he would have had with the use of the right eye alone."

The board's third finding that claimant had vision of only 10/200 of the left eye prior to the happening of the accident in 1941, which finding is not questioned, and the finding, supra, which is questioned, were based primarily on the testimony of Dr. J. C. Markel, an ophthalmologist, called by defendant. He was asked, "Will you state whether or not at the time of your examination in 1933 . . . the claimant had permanently lost the use of his left eye for all practical intents and purposes?" He replied, "He had." But his testimony cannot support the board's finding when measured by the standard laid down by this Court the first time this case was before us, and which has since been upheld in *Wildman v. Pennsylvania Department of Highways,* 157 Pa. Superior Ct. 301, 43 A. 2d 342, and *Criner v. McKee Glass Co.,* 162 Pa. Superior Ct. 627, 60 A. 2d 595. He further testified on direct examination: "Q. Would vision of 10/200 in the left eye be of any practical assistance in connection with his right eye? A. The only thing that would be of any assistance to him would be to avoid large objects coming up to him on the left side. Q. When you say 'large objects,' what do you mean by that? A. A person or an automobile." On cross-examination he testified in part as follows: "Q. An eye of 10/200 along with this man's other eye was of some use, wasn't it, doctor? A. As I mentioned before, he would be able to see large objects on that side. Q. Would he have light perception? A. Oh, yes. Q. That eye would aid him as far as protective vision is concerned, wouldn't it? A. Not directly in front of him. Q. Could he see from the side? A. Yes, large objects off at the side. Q. *Would you say he would be better, or worse off, or the same with that eye enucleated*

*as he would have been with that eye in?* That is with a good eye, using both together. A. If the eye had not been enucleated, he would . . . have been able to see large objects coming up from the left side. In other words, *he would have seen better with the eye in than if it were enucleated.*" (Emphasis added.)

In reaching the finding of ultimate fact that claimant "had suffered the permanent loss of use of the left eye for all practical intents and purposes," it was incumbent on the board to follow the standard established by this Court in *Diaz v. Jones & Laughlin Steel Corp.,* supra (p. 184), viz., "whether *using both eyes* he had better general vision than he would have with only the right eye," i.e., whether he could "see better, in general, using the left eye in connection with his good right eye than by using the right eye alone." While the board ostensibly followed that standard, it was in reality disregarded. The board's finding relating thereto, in our opinion, is not only inconsistent with its third finding but is contrary to, rather than supported by, the testimony of Dr. Markel, which does not differ materially from that of Dr. Max R. Goldman, an ophthalmologist called by claimant.

There can be no question that "Where the findings of fact made by the board are based on competent evidence they are conclusive, and our courts have no power to weigh the evidence and revise those findings or reverse the final action of the board. Vorbnoff v. Mesta Machine Co. et al., 286 Pa. 199, 206, 133 A. 256, 258; Ford v. A. E. Dick Co., 288 Pa. 140, 150, 135 A. 903, 907": *Paulin v. Williams & Co., Inc.,* 122 Pa. Superior Ct. 462, 466, 186 A. 415. But, as stated by the Supreme Court in *Monahan v. Seeds & Durham,* 336 Pa. 67, 74, 6 A. 2d 889: "While the Board's findings of fact when supported by competent evidence are binding and cannot be disturbed, nevertheless the question whether or not there is evidence to support a particular finding

is one of law and may be reviewed on appeal . . ." See also *Minner v. Reno,* 138 Pa. Superior Ct. 37, 9 A. 2d 909. Since the finding in question is not supported by the evidence, the decision of the board cannot be sustained.

Although appellant filed no exception to the original finding and conclusion of Referee Curtis that claimant had sustained an accidental injury and filed no exception to the order of the board setting aside the finding of Referee Gibb that claimant did not sustain an accidental injury on May 14, 1941, it now contends that the board erred in so doing. On the record before us we would be justified in not considering the question raised here for the first time (*Karoly v. Jeddo-Highland Coal Co.,* 166 Pa. Superior Ct. 571, 73 A. 2d 214) ; but, since appellant urges upon us that it did not question the happening of the accident before Referee Curtis because it was not contesting claimant's right to receive compensation for the period of disability but only for the loss of the eye, in order to avoid further possible delay in a cause which has now been pending for an unconscionable length of time we will dispose of the question as though it were properly before us.

Appellant takes the position that because this Court favored "the return of the record to the board for hearing, consideration and determination freed of the errors above pointed out," it was remitted for "further hearing and determination" in accordance with the second provision of §427 of The Workmen's Compensation Act, as amended, 77 PS §879. But the case was remitted not on order of this Court but on order of the Court of Common Pleas under the first provision of §427, 77 PS §877, "for more specific findings of fact . . . to enable it to decide the question of law raised by the appeal."

"The only thing the board was directed by the court to do, and the only thing it had any power to do, was to make specific findings of fact upon the questions submitted by the court and return those findings, with the record, to the court where the appeal was still pending": *Costello v. Schumacher,* 114 Pa. Superior Ct. 296, 299, 173 A. 732. Paraphrasing the statement of the Court in that case, "The attempt of the board [referee] to go beyond the terms of the reference, and to exceed its [his] functions under the statute, has thrown this simple compensation case into a maze of technicalities, obscured the issue between the parties and unduly delayed the final disposition of a claim presented nearly five [eleven] years ago. The subsequent involved history of this case is a glaring illustration of the confusion practically certain to follow such departures from the path outlined by the statute."

The distinction between the two provisions of the statute is clearly pointed out in *Driscoll v. McAlister Brothers, Inc.,* 294 Pa. 169, 144 A. 89. Had the record been remitted in accordance with the second provision of §427, it would have gone "back to the board for further hearing and determination as though on an original petition," *Lettrich v. Allegheny Steel Co.,* 149 Pa. Superior Ct. 660, 664, 27 A. 2d 257, as contended by appellant. But, as we have pointed out, it went back under the first provision of §427 for more specific findings of fact in order to enable the Court of Common Pleas to decide the question of law raised by the appeal. The board, therefore, was entirely right in deciding "that the referee was in error in concluding, as a matter of law, that claimant was not entitled to compensation, and in entering an order of dismissal, for the reason that the sole duty of the referee was to make findings of fact pursuant to the order of the Court of Common Pleas . . ."

The lower court set aside the award of compensation for a period of seven weeks and ordered that compensation be paid for a period of 125 weeks beginning May 21, 1941. "The question was one wholly of law and it was not necessary that the record be remitted for the entry of the only possible order under the court's ruling": *Rovere v. Interstate Cemetery Co., Inc.*, 164 Pa. Superior Ct. 233, 235 (allocatur refused ibid. xxv), 63 A. 2d 388. See also *Lynn v. Pottsville Box Corp.*, 163 Pa. Superior Ct. 446, 62 A. 2d 105.

The order of the court below is affirmed and it is ordered that judgment be entered in favor of the claimant and against the defendant in the sum of $2250, with interest thereon in accordance with the Act.