## Kubler *v.* Yeager, Appellant.

Argued March 3, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*E. C. Marianelli,* for appellant.

*Thomas C. Moore,* for appellee.

OPINION BY ERVIN, J., April 16, 1959:

This is an appeal from an order of the court below affirming a decision of the Workmen's Compensation Board wherein the claimant was awarded compensation for the loss of an eye under §306(c) of the Workmen's Compensation Law.[1]

The board found the following fact: "TENTH: That prior to the accident of September 8, 1953, the claimant suffered an injury to his left eye, but he was able

---

[1] Act of 1915, P. L. 736, §306(c), 77 PS §513.

to see light and large objects with his left eye at the time of the accident of September 8, 1953, so that his sight was better with both eyes than it was using the right eye alone, and therefore, his left eye was not lost for all practical purposes." The board then made the following conclusions of law: "FIRST: The claimant suffered the loss of his left eye as a result of the accident of September 8, 1953, and consequently was permanently disabled.

"SECOND: We conclude that the defendant failed to prove by competent evidence that the claimant had suffered the permanent loss of the use of his left eye prior to the accident of September 8, 1953.

"THIRD: The claimant is entitled to compensation for disability resulting from the loss of his left eye under Section 306(c) of the Workmen's Compensation Act."

The sole question on this appeal is whether the above mentioned findings by the board are supported by competent and substantial evidence. We repeat what was so well said by Judge WRIGHT in *Oliver v. Westinghouse Electric Corp.*, 186 Pa. Superior Ct. 604, 606, 607, 142 A. 2d 486: "It is well settled that (1) the Workmen's Compensation Law is a remedial statute and is to receive a liberal construction; (2) findings of fact by the compensation authorities, if supported by the evidence, are binding upon the courts; and (3) on appeal from an award the evidence must be viewed in the light most favorable to the claimant: Spry v. Polt, 186 Pa. Superior Ct. 326, 142 A. 2d 484. Judicial review in the instant case must be confined to ascertaining whether the findings of fact of the compensation authorities are supported by the evidence: Spina v. Gahagan Construction Corp., 184 Pa. Superior Ct. 420, 135 A. 2d 760.

"Section 306(c) of the statute provides, inter alia, that 'permanent loss of the use' of an eye 'shall be considered as the equivalent of the loss' of such eye. By settled judicial construction this language means that the permanent loss of use of the eye 'for all practical intents and purposes' amounts to the loss of the eye: Stachowski v. Incorporated Real Estate Investors, 174 Pa. Superior Ct. 152, 100 A. 2d 140. And see Curran v. Knipe & Sons, 185 Pa. Superior Ct. 540, 138 A. 2d 251. In our most recent eye case, McClemens v. Penn Auto Parts, 181 Pa. Superior Ct. 542, 124 A. 2d 623, we reviewed the earlier authorities and stated the correct test to be whether the use of the injured eye, without correcting lens, contributes 'materially' to claimant's vision in conjunction with the use of the normal eye."

The only testimony before the board was that of the claimant and defendant's witness, Dr. Robert Anderson. This doctor had not seen the eye prior to the second injury when he removed it. Although the doctor described the condition of the eye before and after its removal and testified that the patient had told him that he was blind in that eye prior to the second accident, the board chose to accept as credible the testimony of the claimant who denied that he told the doctor that he was blind in the injured eye prior to the second accident and testified on cross-examination in part as follows:

"Q. You had light perception in that eye and could see your hands in front of you. Things of that kind? A. Yes. Q. And that's the condition that eye was in when you were injured on September 8, 1953? A. Yes. . . . Q. I believe at that time you stated you could see a little bit, you could see light, if it was bright out, or clear out? A. I could. Q. And see some big objects or something? A. I could see a lot better than I do

now. I could see objects and things like that and light.
I can see a difference, I know. Q. What do you mean?
A. I can't see as good as I could. Q. Well, you know,
of course, your left eye is gone—that was taken out.
A. Sure, but I could see some with that eye. Q. How
do you know that you could see something with that
left eye? A. Well, I had tried it. I would cover this
one eye and look. . . . Q. You used to cover your good
eye? A. I have done that to see whether I could see
and I could see. Q. Thank you. Well, now—A. I had
vision in that eye. Q. You say you had vision? A. I
could see, sure. I could not see as good as I could
out of the other, but I still could see out of that eye.
. . . Q. Do you remember he testified that you had
told him that your left eye was already blind when you
got hurt? A. He told that but I didn't tell him that.
I did not tell him that. I don't think I was asked if
I was hurt before or not and I did not tell him I was
hurt before. . . . A. I could see light and big objects
and stuff, sure. I could see better before than I can
now. I can tell that. Q. That is, you could tell when
it was dark or you could tell when it was daylight?
A. Sure. Q. And you testified at that time that you
could see some big objects. A. Yes, sir. . . . Q. Could
you see out of that eye? A. Yes, I could see some.
That's the reason they didn't take it out. . . . Q. Now,
what was the condition of your eye immediately prior
to the second accident? Could you see out of it? A.
Yes, I could. . . . Q. Was your vision out of your two
eyes then better than it is out of your one eye now?
A. Yes, sir. . . . Q. I will put it to you this way. Could
you, prior to this second accident, the one we are here
about today, with your weakened left eye, could you
see better with both eyes than you can now with only
one? A. Yes, sir, I could see better with both eyes.
Q. Would you say much better? A. Much better, yes."

The doctor did admit that claimant had light perception prior to the second injury.

There was no evidence that claimant had been paid for the loss of an eye as the result of the first injury.

Since the findings of the compensation authorities are against the person having the burden of proof, our power is limited to determining whether the findings can be sustained without a capricious disregard of the competent testimony and whether such findings are consistent with each other and with the conclusions of law and final order: *Yanofchick v. State Workmen's Insurance Fund,* 174 Pa. Superior Ct. 182, 100 A. 2d 387.

There was competent and substantial evidence on the record to sustain the findings of the board. The board was not required to rely on the testimony of Dr. Anderson, defendant's witness, nor was it obliged to accept the testimony of that witness. It could accept or reject, in whole or in part, the testimony of any witness: *Rozauski v. Glen Alden Coal Company,* 165 Pa. Superior Ct. 460, 69 A. 2d 192.

After examining all the testimony, we are satisfied that the findings of the Workmen's Compensation Board are supported by sufficient competent and substantial evidence. The case presents a truly factual issue which has been resolved by the board in favor of the claimant. It was the board's province to pass upon the testimony and determine the credibility to be accorded the witnesses and the weight to be given their testimony.

It is the defendant's contention that the claimant had impaired vision in his eye prior to its enucleation and for that reason is not entitled to compensation for the loss of the eye. This was an affirmative defense and the defendant had the burden of proving it: *Diaz v. Jones & Laughlin Steel Corp.,* 155 Pa. Superior Ct.

177, 38 A. 2d 387. In our opinion he did not meet that burden and a reference to further details will serve no useful purpose.

Order affirmed.