# DeVore *v.* Atlantic Manufacturing Company et al., Appellants.

Argued June 20, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Earl Thomas Britt*, with him *Paul H. Ferguson* and *Frederick W. Anton, III*, for appellant.

*William J. MacDermott*, with him *David Cohen*, for appellee.

OPINION BY WRIGHT, J., September 15, 1966:

This is a workmen's compensation case. On May 19, 1962, in the course of his employment with the Atlantic Manufacturing Company, the claimant, Carl James De-Vore, sustained an accidental injury. On June 1, 1962,

an open compensation agreement was executed in which the injury was described as follows: "While operating air grinder, grinding wheel broke, which resulted in the shattering of the left lens of the glasses employee was wearing and laceration of left eye". On October 3, 1962, claimant filed a petition for modification alleging total loss of vision in the left eye. The Referee found as a fact that claimant had suffered "the permanent loss of use of his left eye for all practical intents and purposes", and awarded compensation for 150 weeks, in addition to 10 weeks healing period, under the permanent injury schedule of The Pennsylvania Workmen's Compensation Act.[1] The Board affirmed the Referee's award. The court of common pleas eventually dismissed an appeal by the employer. This appeal to the Superior Court followed.

Immediately after the accident, claimant was examined by Dr. George J. Dublin who found "a serious eye injury", including a prolapsed iris, a perforated wound of the cornea, and a traumatic cataract. Claimant was admitted to Wills Eye Hospital where Dr. Dublin performed an extensive operation. Claimant was hospitalized for twenty-one days. "He had a rather stormy time". A swelling of the cataract developed and glaucoma ensued. On June 20, 1962, claimant was hospitalized for ten more days, during which period a linear cataract extraction was performed. Dr. Dublin testified on the employer's behalf that, with the aid of a contact lens in the injured eye, claimant had binocular vision. This term simply means that claimant's eyes co-ordinated and he could use them both at once. On cross-examination Dr. Dublin admitted that without the aid of a contact lens claimant had "complete loss of vision in that eye".

Dr. Sidney Weiss testified on claimant's behalf that, without the aid of a contact lens, there was no useful

---

[1] Act of June 2, 1915, P. L. 736, §306(c), 77 P.S. 513.

vision in the injured eye; further that, even with the use of a contact lens, claimant had only partial binocular vision, that his depth perception was reduced to one-third of normal, that his central field of vision was reduced between forty and fifty percent, that his peripheral field of vision was reduced approximately twenty percent, and that claimant was unable to read normal newspaper print. It was the conclusion of Dr. Weiss that, for all practical intents and purposes, claimant had lost the use of the eye.

Claimant testified that he was not aided by the ordinary type of corrective lens, and was therefore fitted with a contact lens. Without the use of this contact lens, he can see only shadows and is unable to distinguish objects. He admitted that use of the contact lens improves his vision, but stated that he still experiences difficulties, inter alia, with depth perception, headaches, and double vision. He testified that, if he turns his head quickly, the contact lens loses its position resulting in complete loss of vision until proper adjustment is made; further, that prolonged use of the contact lens results in soreness "and it tears, a burning sensation. Then the next day I have—its like a flash burn on the eye, I can't put the lens in".

Appellants do not question the finding of the compensation authorities that, without correcting lens, claimant has lost the use of the injured left eye for all practical intents and purposes. It is appellants' position, however, that the proper test "should be" whether the claimant has better vision using the injured eye with the contact lens together with the uninjured eye than he would have with the uninjured eye alone. If this test is to be applied, claimant has not lost the use of his left eye for all practical intents and purposes, and the Board so stated.

In *Massett v. Armerford Coal Mining Co.*, 82 Pa. Superior Ct. 579, claimant's left eye was injured by a

flying stone resulting in a traumatic cataract which, after an operation, was corrected with the use of glasses. The injured eye failed to coordinate with the uninjured eye so that one eye gave full vision with glasses and the other eye full vision without glasses. This court held that, since the use of the injured eye was not wholly lost, compensation could not be awarded under §306(c). The *Massett* case was held controlling in several subsequent cases,[2] but the reserve eye theory upon which it was based was eventually repudiated.

In *Diaz v. Jones & Laughlin Steel Co.,* 155 Pa. Superior Ct. 177, 38 A. 2d 387, the controlling issue was stated to be whether claimant had permanently lost the use of the eye for all practical intents and purposes. "The standard was not, whether, before the accident in 1941, with the right eye gone, he could see sufficiently with the left eye to do his work as a painter, but whether using both eyes he had better general vision than he would have with only the right eye. In other words, could he see better, in general, using the left eye in connection with his good right eye than by using the right eye alone". This standard was reiterated in *Wildman v. Pennsylvania Department of Highways,* 157 Pa. Superior Ct. 301, 43 A. 2d 342, *Criner v. McKee Glass Co.,* 162 Pa. Superior Ct. 627, 60 A. 2d 595, and in the second appeal of the *Diaz* case. See *Diaz v. Jones and Laughlin Steel Corp.,* 170 Pa. Superior Ct. 608, 88 A. 2d 801.

In *Stachowski v. Incorporated Real Estate Investors,* 174 Pa. Superior Ct. 152, 100 A. 2d 140, it appeared that the vision in claimant's injured right eye could be restored by the use of a correcting lens. How-

---

2 *Schultz v. Daugherty Refining Co.,* 130 Pa. Superior Ct. 607, 198 A. 895; *Ward v. Bucyrus-Erie Co.,* 131 Pa. Superior Ct. 18, 199 A. 362; *Reigle v. Sholly,* 140 Pa. Superior Ct. 153, 14 A. 2d 166.

ever, the vision in that eye, when corrected, could not be coordinated with the vision of the normal left eye. The late Judge Ross made the following pertinent statement (italics supplied): "The fact that by means of a correcting lens an otherwise sightless eye, for practical purposes, may be restored to the equivalent of normal function, is no longer decisive of the right to compensation under Section 306(c) solely on the ground that it is 'an eye in reserve'. The issue here is whether claimant has better vision using the injured eye (*without the correcting lens*) along with the left eye than he would have with the uninjured eye alone".

In *McClemens v. Penn Auto Parts,* 181 Pa. Superior Ct. 542, 124 A. 2d 623, use of the injured left eye, without correcting lens, did not contribute materially to claimant's vision in conjunction with use of the normal right eye. In sustaining an award for the loss of the eye under §306(c), we quoted relevant language from the *Diaz* and *Stachowski* cases. A similar factual situation was presented in *Oliver v. Westinghouse Electric Corp.,* 186 Pa. Superior Ct. 604, 142 A. 2d 486. In that case, directing entry of judgment for the claimant, we made the following pertinent summary of principles applicable to workmen's compensation cases generally (citations omitted): "It is well settled that (1) the Workmen's Compensation Law is a remedial statute and is to receive a liberal construction; (2) findings of fact by the compensation authorities, if supported by the evidence, are binding upon the courts; and (3) on appeal from an award the evidence must be viewed in the light most favorable to the claimant. . . Judicial review in the instant case must be confined to ascertaining whether the findings of fact of the compensation authorities are supported by the evidence".

The most recent eye case in this court was *Shannon v. Turissini,* 190 Pa. Superior Ct. 522, 154 A. 2d 310,

wherein claimant's left eye was so badly injured that enucleation was necessary. Claimant had previously suffered an injury to the same eye, resulting in a traumatic cataract which had been removed. We sustained an award under §306(c) for loss of the eye. It was pointed out that, if compensation had been recovered under §306(c) for the earlier traumatic cataract removal, claimant could not have again received compensation for the enucleation. The present appeal is apparently motivated by a footnote in the *Shannon* case which speaks of the possible effect of the successful use of a contact lens.

We are not persuaded that the test firmly established by our prior decisions in eye cases should be altered. This claimant's eye was badly damaged. Whether or not it can be said that claimant makes successful use of the contact lens, it clearly appears that, without the correcting lens, claimant does not have better vision using his injured left eye along with the right eye, than he would have with the uninjured eye alone. The finding of the compensation authorities that claimant has lost the use of his injured left eye for all practical intents and purposes is fully supported by the evidence.

The appeal is dismissed, and the record is remitted to the court below for the entry of a judgment in favor of the claimant. As so entered, the judgment is affirmed. See *Miller v. Pittsburgh Coal Co.,* 77 Pa. Superior Ct. 51.