Glabern Corporation et al., Petitioners *v.* Workmen's Compensation Appeal Board (Michael Moccia), Respondents.

Argued April 5, 1984, before Judges WILLIAMS, JR., MACPHAIL and DOYLE, sitting as a panel of three.

*Susan McLaughlin*, with her, *David L. Pennington, Harvey, Pennington, Herting & Renneisen, Ltd.*, for petitioner.

*Arthur G. Nassau*, for respondent, Michael Moccia.

OPINION BY JUDGE WILLIAMS, JR., August 7, 1984:

The Glabern Corporation (Glabern) and its insurance carrier have appealed from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's denial of Glabern's petition to terminate the benefits of Michael Moccia (claimant).

On November 12, 1974, the claimant sprained several parts of his body, including his neck and the left side of his spine bone, while working as a truck driver for Glabern. At the time of his accident the claimant was almost 59 years old; he had a 10th grade education; and he had been a truck driver for most of his vocational life. As a result of the claimant's injuries, the employer issued a Notice of Compensation Payable, dated December 18, 1974, pursuant to which the claimant was to receive $106.00 a week for total disability.

On April 19, 1976, Glabern filed a petition to terminate the claimant's benefits. The petition alleged that the claimant had fully recovered from his injuries, and that he was able to resume work without limitation as of April 6, 1976.

At various times between May 1976 and September of 1977, hearings regarding the employer's petition were held before a referee. The employer's medical witness, Dr. William H. Simon, opined that the claimant had completely recovered from his injuries as of the date alleged in the petition to terminate benefits. The claimant's medical witness, Dr. Raymond O. Stein, testified that the claimant had a

residual physical disability from his injuries. Dr. Stein also concluded that the claimant could never again work as a truck driver and could only do work of a sedentary nature.

In light of the opinion of the claimant's medical witness, Glabern proceeded to present the testimony of a vocational rehabilitation expert, Robert P. Wolf. Mr. Wolf testified that there were jobs available to the claimant; and offered a list of specific job opening which, in his view, were within the claimant's qualifications. That testimony was given in response to a hypothetical question which assumed the truth of Dr. Stein's description of the claimant's physical condition, and which also took into account the claimant's age, education and work experience. The claimant offered no evidence to rebut the testimony of Mr. Wolf.

On February 16, 1978, the referee issued a decision which included three factual findings. Only two of those findings are of significance here. They were as follows: (1) that as of April 6, 1976, the claimant still had some residual physical disability as a result of his injuries, but was able to perform sedentary work; and (2) that the employer had sustained its burden of proving that, given the claimant's residual disability, age, education and work experience, there were jobs available to him. Based on those findings, the referee ordered the claimant's benefits *terminated* as of April 6, 1976.

The Board, following an appeal thereto by the claimant, *expressly affirmed each of the referee's findings of fact.* The Board determined, correctly in our view, that those findings were sufficiently supported by the evidence. However, given the referee's finding that the claimant had a residual disability, the Board concluded that the referee's decision to

*terminate* benefits was ill-founded. In that regard, the Board held that the claimant's residual physical disability would entitle him to partial-disability compensation, depending upon the difference between his remaining earning power and his pre-injury wage. Consequently, the Board remanded the case to the referee *"for the limited purpose of determining claimant's prior wage, his present earning power and thus the amount of compensation due him, if any."* (Emphasis added.)[1]

At a remand hearing held on June 5, 1979, the referee permitted the claimant to present Dr. Saul S. Leshner, as an expert witness on the subject of vocational placement. Over the objection of Glabern, this witness was allowed to give his opinion of the claimant's employability. According to Dr. Leshner, the claimant's physical condition, age, education and work experience rendered him "totally unemployable." Indeed, Dr. Leshner was of the opinion that the claimant's physical disability by itself prevented him from doing work of any kind—even work of a sedentary nature. Leshner indicated that, in arriving at his evaluation, he had reviewed the reports of Dr. Stein and Mr. Wolf, and had interviewed the claimant about two weeks before the June 5, 1979 remand hearing.

On October 10, 1980, the referee issued his second decision in the case. He repeated his original finding that the claimant had a residual physical disability but could perform sedentary work. However, the referee reversed his previous finding concerning the availability of work. Based on the testimony given by Dr. Leshner at the remand hearing, the referee found, in his second decision, that the claim-

---

[1] The date of the Board's opinion and order was December 14, 1978.

ant was unemployable. The referee stated that he no longer found credible the testimony previously given by the employer's vocational witness, Mr. Wolf, regarding the question of job availability.

As a result of his new finding—that the claimant was unemployable—the referee entered an order dismissing the employer's petition to terminate benefits; and directed the employer to reinstate the claimant's total-disability compensation, *effective April 6, 1976.* When the referee's second decision was affirmed by the Board, the instant appeal to our Court followed.

In challenging the Board's affirmance of the referee's post-remand decision, appellant Glabern focuses on the referee's admission and acceptance of the testimony given by Dr. Leshner in the remand proceedings. Glabern asserts that the referee, in allowing Leshner's testimony concerning the claimant's employability, improperly went beyond the scope of the Board's remand order and permitted the claimant to relitigate the previously decided issue of work availability. The employer also argues that because Dr. Leshner was not a medical doctor, he was not competent to give an opinion regarding the claimant's physical ability to perform sedentary work.

In admitting Dr. Leshner's testimony at the June 5, 1979 remand hearing, the referee ruled that the Board's remand order had implicitly authorized the taking of additional evidence concerning the availability of work to the claimant. The Board, when it affirmed the referee's second decision, agreed with his interpretation of the remand order. The Board also reasoned that the referee's post-remand evidentiary ruling had the "practical" value of obviating a modification petition by the claimant.

We cannot see how the Board's original opinion and accompanying remand order could validly be

given the construction the referee gave them. As noted, the referee's initial finding that the claimant could do sedentary work, and the finding that such work was available to the claimant, were expressly affirmed by the Board as being supported by sufficient evidence. Therefore, the taking of additional evidence relative to either of those findings could not logically be read into the intended scope of the remand order. The remand was for a limited purpose that had been clearly specified by the Board: The referee was to determine the difference between the wages of the claimant's previous employment and the wages of the work found to be available to him; and thus ascertain what amount, if any, was due as compensation for partial disability—*as of April 6, 1976.*

In short, the Board's remand decision gave the referee no basis for inferring therefrom an authority to re-open the issue of work availability, insofar as the employer's petition was concerned. Moreover, because the referee's initial finding on that issue was correctly determined to be supported by sufficient competent evidence, the Board would have been without legal power to remand for additional evidence concerning that issue. *Topps Chewing Gum, Inc. v. Workmen's Compensation Appeal Board,* 56 Pa. Commonwealth Ct. 425, 425 A.2d 57 (1981); *Forbes Pavilion Nursing Home, Inc. v. Workmen's Compensation Appeal Board,* 18 Pa. Commonwealth Ct. 352, 336 A.2d 440 (1975). There is nothing to indicate that the claimant did not have, during the hearings preceding the referee's first decision, the opportunity to present evidence to rebut the testimony of the employer's vocational expert. The claimant did not avail himself of that opportunity.

Based on the above considerations, we must conclude that when the referee, on remand, admitted into evidence and accepted Dr. Leshner's opinion con-

cerning the availability of work to the claimant, the referee improperly exceeded the scope of the Board's remand order. For the referee to do so was an error of law; and his second decision, which was grounded on that error, should have been vacated by the Board. *Gulf Oil Corp. v. Workmen's Compensation Appeal Board,* 54 Pa. Commonwealth Ct. 443, 421 A.2d 863 (1980); *cf. Diaz v. Jones and Laughlin Steel Corp.,* 170 Pa. Superior Ct. 608, 88 A.2d 801 (1952) (Board exceeded remand instructions of common pleas court). A referee should restrict remand proceedings to the purpose indicated by the Board's remand order; to allow him to do otherwise will result in unnecessary confusion. *See McCloskey v. Workmen's Compensation Appeal Board,* 501 Pa. 93, 97 n. 2, 460 A.2d 237, 239 n. 2 (1983) (plurality opinion).

Notwithstanding the Board's attempt to do so, the referee's second decision could not be treated as an advance disposition of a predicted reinstatement petition from the claimant. The second decision did not even purport to address an intervening change in the claimant's condition, but instead related back to *April 6, 1976*—the date initially found by the referee to be the date of the claimant's *partial recovery* from his injuries. If there was a recurrence of the claimant's total disability, then it was incumbent upon the claimant to file an actual and timely petition to have his total-disability benefits reinstated.[2] It is not the Board's function to fashion such a petition out of the air. Moreover, a petition to reinstate benefits cannot serve the purpose of retrying the issue of the extent of disability previously determined pursuant to a petition to terminate benefits. *Plouse v. Work-*

---

[2] *See Gulf Oil Corp.; Dinges Transfer v. Workmen's Compensation Appeal Board,* 15 Pa. Commonwealth Ct. 468, 471, 326 A.2d 668, 669-70 (1974).

*men's Compensation Appeal Board,* 37 Pa. Commonwealth Ct. 237, 389 A.2d 1218 (1978).

For the reasons set forth, we must vacate the Board's order; and remand the case for further proceedings.

### Order

And Now, the 7th day of August, 1984, the order of the Workmen's Compensation Appeal Board at No. A-80130, dated July 30, 1981, is vacated. The case is hereby remanded to the Board, for resubmission to the referee to determine the amount of partial-disability compensation, if any, that was due the claimant effective April 6, 1976.