557 A.2d 816

MacFarland Landscape Service, and Federal Insurance Company, c/o Chubb Group of Insurance Companies, Petitioners *v.* Workmen's Compensation Appeal Board (Rosario), Respondents.

Argued March 9, 1989, before Judges COLINS and MCGINLEY, and Senior Judge BARBIERI, sitting as a panel of three.

*Kenneth F. DeMarco*, with him, *Jonathan B. Sprague, Post & Schell, P.C.*, for petitioners.

*S. Robert Levant*, for respondent, Domingo Rosario.

OPINION BY SENIOR JUDGE BARBIERI, April 20, 1989:

MacFarland Landscape Service (Employer) appeals here an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision awarding to Domingo Rosario (Claimant) compensation for a work-related injury causing loss by enucleation of Claimant's right eye. We affirm.

Claimant suffered an injury to his right eye on June 1, 1984 and the referee's uncontested finding as to the injury is as follows:

2. On June 1, 1984, while in the course and scope of his employment, the Claimant sustained an injury to his right eye when he was struck in the eye by a piece of wood which was thrown by a chipping machine. The chipping machine was being used to grind up tree branches and foliage that had been cleared during the landscape work of his employer ... .

The contest in this case turns on the question of whether the right eye which was required to be removed because of the injury of June 1, 1984 had enough visual capacity prior to that injury so that the injury caused the compensable loss of useful vision.[1] As to the critical circumstances bearing on this principal issue, the referee's Finding of Fact No. 5 is as follows:

5. Some years before the accident of June 1, 1984, the Claimant had sustained an injury to his right eye. As a result of that injury there was diminished vision in the right eye. The visual accuity

___

[1] Section 306(c)(7) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §513(7).

[sic] of the Claimant's right eye was last tested on June 16, 1982, by Dr. Harry D. Carrozza, a Board Certified Ophthalmologist, who was then Chief of the Ophthalmology Department of Roxborough Memorial Hospital. At that time, the visual accuity [sic] of the Claimant's right eye was 5/70, which converts to 20/280. At that time, the right eye contributed materially to the Claimant's vision in conjunction with the use of the left eye. Immediately prior to the injury of June 1, 1984, the Claimant could see objects with his right eye, had peripheral vision with the right eye and could see smaller objects at close range with the right eye. As of that time, the right eye contributed materially to the Claimant's vision in conjunction with the use of the left eye and he had better vision than he would have had with the left eye alone.

On appeal, the referee's findings and decision were affirmed by the Board.

At the outset, it must be remembered that in a case such as this one, where the injury required that the injured eye be removed, or enucleated, such removal presumptively constitutes a compensable loss or loss of use of the eye and the burden to prove that the usefulness of that eye had been lost prior to the injury is an affirmative defense with the burden of proving that contention on the employer. *Kubler v. Yeager*, 189 Pa. Superior Ct. 339, 150 A.2d 383 (1959); *Diaz v. Jones & Laughlin Steel Corp.*, 170 Pa. Superior Ct. 608, 88 A.2d 801 (1952). In this connection, we note that the referee in this case rejected the testimony of Employer's medical witness. Finding of Fact No. 6.

The testimony of Claimant's two medical witnesses, accepted by the referee, establishes that the injured eye had to be enucleated because of the danger of infection

had to be enucleated because of the danger of infection in that eye spreading to the good left eye causing loss of that member also. Deposition of Dr. Nibondh Vacharat, a Board Certified Ophthalmologist, who performed the surgical removal of the eye.

Prior to the injury of June 1, 1984, Claimant had suffered injury to his right eye, but he testified that as of June 1, 1984 he had some vision in his right eye, sufficient to see a person four or five feet away from him; could recognize persons and could read a newspaper if brought up close to the eye; and see objects in motion on his right side.

Dr. Harry D. Carrozza, a Board Certified Ophthalmologist, saw the Claimant for a foreign object in his right eye apparently suffered on June 16, 1982. At that time, Dr. Carrozza on testing Claimant's vision in the right eye found vision of 5/70 on a metric scale, which converts to 20/280, R.R. 90a-96a, amounting to a 15% visual acuity which would significantly assist the Claimant in performing such ordinary activities as walking, picking up chairs, walking past people, shopping at a super market, but would probably not assist with tasks requiring fine vision. When questioned as to the significance of Claimant's vision in 1982, Dr. Carrozza stated as follows:

> In relation to going through doors, gross objects, yes, it would be a significant loss in relation to activities in terms of depth perception, fine details, it wouldn't be significant. So, I think it's a yes and no.

Dr. Vacharat, questioned concerning the 1982 vision reported by Dr. Carrozza, testified that Claimant would then have been able to see the third line on the ordinary eye chart at five feet; and that, in his opinion, an eye with such vision was a useful eye.

In *Kubler,* where the claimant was his only witness as against the testimony of the operating surgeon, called by the employer, the Board found that the claimant, prior to the injury that required the removal of the eye, had been able to see light and large objects with that eye. In sustaining the award by the Board, the Superior Court stated:

> There was competent and substantial evidence on the record to sustain the findings of the board. The board was not required to rely on the testimony of Dr. Anderson, defendant's witness, nor was it obliged to accept the testimony of that witness. It could accept or reject, in whole or in part, the testimony of any witness: Rozauski v. Glen Alden Coal Company, 165 Pa. Superior Ct. 460, 69 A.2d 192.
>
> After examining all the testimony, we are satisfied that the findings of the Workmen's Compensation Board are supported by sufficient competent and substantial evidence. The case presents a truly factual issue which has been resolved by the board in favor of the claimant. It was the board's province to pass upon the testimony and determine the credibility to be accorded the witnesses and the weight to be given their testimony.[2]
>
> It is the defendant's contention that the claimant had impaired vision in his eye prior to its enucleation and for that reason is not entitled to compensation for the loss of the eye. This was an affirma-

---

[2] The Board was the ultimate trier of fact and credibility issues on the date of the *Kubler* decision and not the referee who became and is now the ultimate trier of fact and credibility issues after the amendments of 1972. *See Universal Cyclops v. Workmen's Compensation Appeal Board (Krawczynski),* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973).

tive defense and the defendant had the burden of proving it. Diaz v. Jones & Laughlin Steel Corp., 155 Pa. Superior Ct. 177, 38 A.2d 387. In our opinion he did not meet that burden and a reference to further details will serve no useful purpose. Id. at 344.

In *Diaz,* where the claimant's eye was removed following an injury on May 14, 1941, there had been a prior injury, as in this case and in *Kubler,* which left the claimant with vision of only 10/200 in the injured eye. As in this case, this vision would be of assistance to the claimant principally to see large objects coming up on his left side, a large object defined as a person or an automobile. He also had light perception and could see large objects at certain angles particularly from the left. Although the Board in *Diaz* would not have awarded benefits for the lost eye, this was reversed in favor of the claimant as being not supported by competent evidence.

We particularly note that the claimants in *Kubler* and *Diaz* had less visual acuity prior to the injury in suit than was enjoyed by Claimant in this case.

Employer draws our attention to several eye cases and to certain cases involving other member losses, particularly relying upon our decision in *Joyce Western Corporation v. Workmen's Compensation Appeal Board (Fichtorn),* 103 Pa. Commonwealth Ct. 204, 519 A.2d 1107 (1987), *rev'd,* 518 Pa. 191, 542 A.2d 990 (1988). As noted, the decision of this Court was reversed by the Supreme Court. Employer in its brief points out that the reversal was on the question of permanence rather than on the extent of lost vision. We note, however, that there was no lost eye or enucleated eye involved in *Joyce.* The case involved a cataract with a finding by the referee that the "specific loss has been caused by his [claimant's] own refusal to undergo corrective surgery." We recognize that

the many cases brought to our attention in the able and thorough brief of Employer represent proper presentations of the legal principles involved in those cases; on the other hand, however, we believe, as the Superior Court noted in *Kubler,* that cases such as this one present "a truly factual issue" which is properly resolved by the compensation authorities as was done in this case.

Since we find no error in the decisions of the referee and Board, we will affirm.

### ORDER

NOW, April 20, 1989, the order of the Workmen's Compensation Appeal Board, as of No. A-92957, dated August 9, 1988, is hereby affirmed.