## Roveran, Appellant, v. Franklinshire Worsted Mills et al.

120

Argued October 29, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas M. J. Regan,* with him *I. E. Coopersmith,* for appellant.

*J. Paul Erwin,* for appellee.

OPINION BY PARKER, J., November 19, 1936:

The claimant, while in the course of his employment with the defendant company, suffered an injury to his left eye. An agreement was entered into between the parties under which compensation was paid until Janu-

ary 16, 1935, when a petition for termination was filed by the defendant. After hearing the referee found that the claimant had lost the industrial use of the left eye and awarded compensation under §306 (c) of the Workmen's Compensation Act. A majority of the board, the chairman dissenting, affirmed the action of the referee, and, on appeal, the court of common pleas reversed the order of the board and directed that the case be referred back to the Workmen's Compensation Board to the end that it might be determined what, if any, compensation the claimant might be entitled to receive on account of partial disability.

The referee, affirmed by the board, found in part as follows: "The claimant's vision was 21/100, corresponding to a visual acuity of 48.9% according to the Snellen scale . . . . . . The claimant is a machinist. Much of his work has been on a lathe which requires careful measurement and the ability to distinguish fine lines and delicate manipulations. He has also acted as a clerk where it was necessary to weigh packages and to read scales. This kind of work the claimant could do with his right eye if the left eye were covered. If the left eye is not covered and is corrected to the point where he can still see without double vision he cannot do any of the fine work outlined above. With the greater correction he would have double vision." It was then found that the claimant has lost the industrial use of his left eye.

There was evidence to support the conclusion that the claimant could not, without further correction for the injured eye, distinguish fine lines or make delicate manipulations required of machinists if the good eye was covered, but there is not any evidence to support a conclusion that even under the same conditions the claimant would be so incapacitated that he could not find employment in work to which he is fitted. In fact, the uncontradicted evidence from the witnesses for both

parties supports the findings of referee and board that he still retains 48.9% of the normal vision in the injured eye. It is to be noted that the fraction 21/100 is a technical expression, and as used in ophthalmology expresses a finding that the claimant at a distance of twenty-one feet can read the letters on the 100 line of the standard Snellen Type Chart and the equivalent expression "a visual acuity of 48.9%" does not denote that the person tested has that percentage of vision at all distances. In fact the evidence clearly shows that for practical purposes, claimant has little vision at close distances. However, the fact remains that taking all conditions into account, in the opinion of the experts as well as the fact finding bodies, he still has 48.9% of normal vision in the injured eye.

We agree with the appellant that the question as to whether he has lost the industrial use of his eye is here to be determined from the disability of the injured eye without reference to the remaining good eye. This follows as a corollary to the case of Lente v. Luci, 275 Pa. 217, 119 A. 132, where it was held that when a workman enters into his employment after losing one eye and then while in the course of his employment loses his remaining eye, the employer is not liable for total disability, but only for compensation under §306 (c) for the loss of one eye.

Section 306 (c) in giving compensation for the loss of an eye or certain other members provides that "permanent loss of the use of ...... an eye ....,. shall be considered as the equivalent of the loss of such ...... eye." Following a liberal construction of the compensation laws, the appellate courts of this state have held that the term "the permanent loss of the use of an eye" is not to be taken as requiring an entire deprivation of sight. "If the sight is practically destroyed and only a little vision left, the act should afford compensation for this the same as if the sight were gone

entirely": *Quinn v. Amer. Int. Ship Bldg. Corp.*, 77 Pa. Superior Ct. 304, 306. Also see *Androlonis v. P. & R. C. & I. Co.*, 280 Pa. 71, 124 A. 336.

"The expressions 'loss' and 'loss of the use' as used in section 306 (c) should be given their unrestricted and ordinary use; and the claimant's eye or the use of it, is not lost unless it is useless in any employment for which claimant is physically and mentally fitted": *Massett v. Armerford Coal M. Co.*, 82 Pa. Superior Ct. 579, 583.

The eye has not been destroyed and the referee and board have found with reference to the use of the eye that the capacity for sight in the injured eye is practically one-half of normal vision. While the evidence justifies the conclusion that the claimant, when using both eyes, cannot fulfil all the requirements of a machinist and cannot distinguish fine lines and make delicate manipulations, there is no evidence which would warrant a finding that claimant is incapacitated from performing any employment for which he is physically and mentally fitted. It must also be taken into consideration that the findings of the referee and board show that the claimant's vision could be corrected by the use of glasses so as to extend the field of vision as to near objects, if such correction did not create double vision. It follows that if the claimant should lose the use of his right eye, the field of vision of the left eye could be further extended by the use of a proper lens. This does not indicate a practical loss of the use of the left eye. "We may not hold that a man has lost the use of an eye when the impairment of vision is not sufficient to disqualify him for employment for which he is mentally and physically qualified. The evidence does not justify the conclusion that claimant is disqualified within the rule of those cases; there is evidence that he cannot now perform a certain kind of work which he performed as a machinist, but that lim-

ited disability does not bring him within the provisions of clause c": *Fillip v. Wm. Cramp & Sons S. & E. Bldg. Co.*, 80 Pa. Superior Ct. 68, 72. In the case of *Novak v. State W. Ins. Fund*, 113 Pa. Superior Ct. 555, 173 A. 827, practically the same situation was presented as here, except that in that case the claimant retained 64% of normal sight measured by the same standards, while here the proportion is 48.9%. We are all of the opinion that the case is controlled by the last two cases cited and that the claimant is not entitled to compensation under §306 (c) since there is no evidence to support the findings of referee and board. The fact finding bodies determined that claimant had 48.9% of normal vision which is far from having lost the use of his eye. Discussion cannot add to the force of that statement and the evidence does not disclose any facts which would affect its force. Our conclusions are in accord with those in other jurisdictions: See *Cline v. Studebaker Corp.*, 189 Mich. 514, 155 N. W. 519, L. R. A. 1916 C, 1139; *Boscarino v. Carfagno & Dragonette*, 220 N. Y. 323, 115 N. E. 710.

Fortunately the door to a claim for compensation is not closed, and if claimant has suffered and will suffer partial disability and a consequent loss of earning power he is entitled to an award. This was pointed out by the chairman of the board in his dissenting opinion and the court below properly directed that the record should be referred back to the board for further action.

The order of the court below is affirmed and it is directed that the record be returned to the Workmen's Compensation Board for further action not inconsistent with this opinion.