## McClemens *v.* Penn Auto Parts, Appellant.

Argued March 5, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*David J. Conroy,* with him *James W. Scanlon,* for appellant.

*Romwald Kenowski* and *A. C. F. Kenowski,* for appellee.

OPINION BY WRIGHT, J., August 8, 1956:

Carl McClemens, claimant in this case, was injured on August 1, 1953, in the course of his employment with Penn Auto Parts, when a piece of steel penetrated his left eye. The Referee found as a fact that claimant "suffered the loss of use of vision of the left eye for all practical uses and purposes", and made an award for the loss of the eye under the permanent injury schedule of the Workmens Compensation Law.[1] The employer appealed to the Workmens Compensation Board, which affirmed the Referee's findings of fact, conclusions of law, and order. An appeal was then taken to the Court of Common Pleas of Lackawanna County, which tribunal sustained the award and directed the entry of judgment in favor of the claimant. This appeal to the Superior Court followed.

Appellant's contention is that "the award for loss of use of an eye was not supported by sufficient competent evidence". This presents a question of law which may be reviewed on appeal: *Monahan v. Seeds & Durham*, 336 Pa. 67, 6 A. 2d 889. In determining it, we are required to consider the testimony in the light most favorable to the claimant: *Nelson v. Borough of Greenville*, 181 Pa. Superior Ct. 488, 124 A. 2d 675. If the finding of the Board is supported by the evidence it is binding upon us: *Messikomer v. Baldwin Locomotive Works*, 178 Pa. Superior Ct. 537, 115 A. 2d 853.

The only testimony, other than that of the claimant, was that of Dr. Stanley W. Boland, a specialist in ophthalmology. Although Dr. Boland's examinations of the eye were made at the request of the insurance carrier,

---

[1] Act of June 2, 1915, P. L. 736, section 306(c), as amended, 77 PS 513, which provides, inter alia, that "permanent loss of the use" of an eye "shall be considered as the equivalent of the loss" of such eye.

he was called as a witness on behalf of the claimant. Dr. Boland testified that the foreign body "passed entirely through the eye and is located outside the globe"; that the visual efficiency of the injured eye, so far as distance vision is concerned, is seventy-five percent, but that the percentage of distance vision was a misleading factor "because the near vision is nil and, I believe, you will have to pay this man for the loss of his eye"; that the injury "involves that part of his eye in which he should have his best vision"; that, while claimant can read numbers with both of his eyes open, he does not "get any aid in the reading of them from his left eye"; and that, in his professional opinion "this man has lost the vision in his left eye for all practical uses and purposes".

Appellant cites, inter alia, *Fillip v. Cramp and Sons*, 80 Pa. Superior Ct. 68; *Novak v. State Workmen's Insurance Fund*, 113 Pa. Superior Ct. 555, 173 A. 827; and *Roveran v. Franklinshire Worsted Mills*, 124 Pa. Superior Ct. 119, 188 A. 78, each of which involved a percentage impairment of the entire vision of an eye. In the case at bar the percentage impairment relates to distance vision only. The near vision, that part of the eye in which Dr. Boland states claimant should have his best sight, has been totally destroyed.

In *Diaz v. Jones and Laughlin Steel Corp.*, 155 Pa. Superior Ct. 177, 38 A. 2d 387, President Judge KELLER enunciated the standard in eye cases to be "whether *using both eyes* he had better general vision than he would have with only the right eye. In other words, could he see better, in general, using the left eye in connection with his good right eye than by using the right eye alone? If he could, he had not lost the use of his left eye to such an extent as to be considered the equivalent of the permanent loss of the eye". This standard

was reiterated in *Wildman v. Pennsylvania Department of Highways*, 157 Pa. Superior Ct. 301, 43 A. 2d 342, and in the second appeal of the *Diaz* case. See *Diaz v. Jones and Laughlin Steel Corp.*, 170 Pa. Superior Ct. 608, 88 A. 2d 801.

In his well considered opinion for the court en banc, Judge ROBINSON reasoned that the visual situation in the case at bar is the converse of that in *Barkus v. Thornton-Fuller Co.*, 157 Pa. Superior Ct. 239, 42 A. 2d 320, wherein the vision in claimant's injured left eye was "such as he would have looking through a long tube". We are not impressed by appellant's criticism of this reasoning on the ground that, in the *Barkus* case, the award was for total disability. This was due to the circumstance that, because of glaucoma, there was also no useful vision in claimant's right eye.

The most recent eye case decided by this court is *Stachowski v. Incorporated Real Estate Investors*, 174 Pa. Superior Ct. 152, 100 A. 2d 140, wherein we sustained an award for the loss of the right eye, even though a correcting lens resulted in normal vision, because the corrected vision of the right eye could not be coordinated with the vision of the uninjured left eye. Judge ROSS said: "This language [see footnote 1] by settled judicial construction means that 'the permanent loss of its use *for all practical intents and purposes'* amounts to the loss of an eye, compensable as such under §306(c). . . . The fact that by means of a correcting lens an otherwise sightless eye, for practical purposes, may be restored to the equivalent of normal function, is no longer decisive of the right to compensation under §306(c) solely on the ground that it is 'an eye in reserve'. The issue here is whether claimant has better vision using the injured eye (without the correcting lens) along with the left eye than he would with

the uninjured eye alone". See also *Criner v. McKee Glass Co.*, 162 Pa Superior Ct. 627, 60 A. 2d 595.

In the case at bar the use of the injured left eye does not contribute materially to claimant's vision in conjunction with the use of his normal right eye. The unequivocal and uncontradicted testimony of Dr. Boland fully supports the controlling finding. In the light of this expert medical testimony, and contrary to appellant's contention, we conclude that claimant was properly awarded compensation for the loss of his eye.

Judgment affirmed.