Corrado v. Mattioli

Before Milner, P. J., Waters and Ullman, JJ.

*Alexander F. Barbieri,* for claimant.

*John J. McDevitt, 3rd,* for defendant.

ULLMAN, J., January 6, 1960.—This appeal from the Workmen's Compensation Board was argued twice before the court by able and experienced counsel. Briefs and supplemental briefs were filed by both sides. And many issues were discussed at considerable length. In fact, there might be some reason to fear that able counsel felt that the court counted issues rather than weighed them. Be that as it may, rarely have so many blind alleys been so assiduously and expertly explored.

The court has read all of the briefs carefully and examined the record brought before the court by certiorari and is of the opinion that there are but two real issues. The principal one is substantially accurately stated by defendant in his brief in the following language:

"The issue between claimant and defendant involves the question of whether or not claimant suffers from injury and disability separate and distinct from the injury to his right foot and the disability incident

thereto; but nevertheless resulting from the accident on April 24, 1952."

The second issue is whether claimant suffered "the loss of industrial use" of his foot or the loss of use of his foot *for all practical intents and purposes.* The two phrases are by no means synonymous, for, as will hereinafter be pointed out, they may well be of different import and very different consequences may flow from them.

The issues were presented to the compensation authorities by a not too appropriate petition filed by claimant which rather lumps together the first and the second paragraphs of section 413 of The Pennsylvania Workmen's Compensation Act.

The claimant had been paid 150 weeks for the "industrial" loss of use of his foot. He had refused to sign a final receipt presented by defendant, and defendant had thereupon ceased payment. Presumably under the pressure of need of funds claimant took the initiative to present the question to the compensation authorities as to whether he was not entitled to further compensation. Under the rather peculiar facts of this case the initiative should properly have been taken by defendant to establish that its obligation to pay compensation had ceased. But it does not appear from the record that the question of which side had the burden of proof played any material part in the decision of the Workmen's Compensation Board, setting aside Referee Alessandroni's finding of total disability, and limiting the compensation to that payable for the loss of the foot only.

Assuming, arguendo, that the burden of proof properly should have been assumed by defendant, the law is nonetheless clear and well settled, as stated by the Superior Court in Curran v. Walter E. Knipe and Sons, Inc., 185 Pa. Superior Ct. 540, 545 (1958):

"Whether the defendant has met this burden is a question of fact for the referee and the board and not for the court. A court is not permitted to weigh the evidence or to substitute its findings for those of the compensation authorities if there is legally competent evidence to support them. Savolaine v. Matthew Leivo & Sons, 131 Pa. Superior Ct. 508, 510, 200 A. 243 (1938); Flood v. Logan Iron & Steel Co., 145 Pa. Superior Ct. 206, 20 A. 2d 792 (1941); McClemens v. Penn Auto Parts, 181 Pa. Superior Ct. 542, 544, 124 A. 2d 623 (1956).

"The question for us, as it was for the court below, is, therefore, not what we would find from the evidence if sitting as a fact finding tribunal, but whether the finding of the permanent loss of the use of the leg is supported by competent evidence. Savolaine v. Matthew Leivo & Sons, supra, and McClemens v. Penn Auto Parts, supra. As the board found for the defendant we must view the evidence in the light most favorable to the defendant and give it the benefit of all inferences reasonably deducible therefrom. Rice v. Public Meat Market, 166 Pa. Superior Ct. 328, 329, 70 A. 2d 443 (1950)."

It would seem to be clear that there is testimony in the record which, giving defendant the benefit of all inferences reasonably deducible therefrom, would justify a finding that claimant's disability as a result of the accident was limited to the loss of use of the foot. There is also testimony in the record from which the board could have found that claimant's disability, which is, in fact, admittedly total, was causally related to the accident. That it was the board's prerogative to weigh this testimony and accept in whole or in part the testimony of any of the witnesses cannot be gainsaid. The difficulty with this case is that the board in weighing the testimony used incorrect scales, for its concept of defendant's obligation was not a

correct one as a matter of law, nor can the finding of fact in the opinion be reconciled with its order.

As has heretofore been pointed out, it is not for the court to weigh the evidence, and the record must therefore be remanded to the Workmen's Compensation Board to receive such further testimony as either side may desire to produce to clarify the issues and then to consider the record in the light of the law as laid down in this opinion.

Claimant, a bricklayer, was injured by a fall in the course of his employment when a scaffold on which he was laying bricks twisted and dropped to the ground. It is not disputed that as a result of this fall claimant received an unusually severe crushing fracture of the right ankle from which he never recovered despite several operations. And it is equally not disputed that claimant is in fact totally disabled as a result of the combined impact of the ankle injury and of the disability resulting from a degenerated disc between the fifth lumbar and the first sacral vertebrae and a considerable condylar sclerosis of the body of the fifth lumbar vertebra, resulting in irritation of a nerve root, while the particular nerve is not mentioned in the record, it would seem that it must have been the sciatic nerve, which results in pain in the hip and the leg. Prior to the date of the injury, according to the agreement, claimant earned $117.50 a week. As far as the record discloses, from the date of the injury on April 24, 1952, claimant has not worked one day nor earned one dollar.

In order to determine whether claimant's compensation should be limited to the amount payable for the loss of use of a foot or whether he is entitled to compensation for total disability, there are two questions which must be answered. The first question is whether the injury has resolved itself into the loss of use of the foot *for all practical purposes*. The second ques-

tion is whether the degenerated disc, and the disability that flows from it, are causally related to the accident of April 24, 1952, even though not diagnosed until some time later.

Immediately after the accident claimant was seen by Dr. Anthony F. DePalma, an orthopedic surgeon of standing and repute, at Methodist Hospital. A closed reduction of the fracture ankle was attempted and it failed. It was then necessary to perform an open reduction, which was performed the next day. Dr. DePalma testified:

"At that time his talus, which is one of the ankle bones, was completely disrupted and had to be totally removed. This is a relatively uncommon procedure but it was the best that could have been done at the time in view of the severe trauma to the foot."

It would seem logical to infer that the impact of the fall must have been a severe one.

Following a period during which claimant first wore a cast and then a brace, it became apparent, Dr. DePalma testified, that the foot was not standing up under the stress and strain of weight-bearing and therefore a second operation was performed on September 10, 1953, more than a year and four months after the first operation. At that time the tibia, the major bone of the lower leg, was fused with the os calcis, which is the heel bone, resulting in the complete loss of the ankle joint and the subtalar joint. As to it Dr. DePalma testified:

"It was successful in the sense that it achieved what we had aimed to do, and that is to stabilize his foot; but at best these are only palliative measures and they certainly don't give an excellent result."

Dr. DePalma continued to see the patient until February 6, 1954, at which time it became apparent that defendant would not pay him and claimant was unable to pay him.

On January 21, 1954, a supplemental agreement was entered into, and this supplemental agreement requires careful consideration and an analysis. It recites that as of that date "Said employee, Dan Corrado, suffered 100 per cent loss *of industrial use* of right foot," and then provided: "And shall be paid compensation for one hundred and fifty weeks at the rate of $30 per week."

There are two things wrong with that agreement. In the first place, under our compensation law there is no such thing as the loss of industrial use, and there has not been since the repeal of the Act of 1937 in 1939. In the second place, the agreement does *not* recite that all disability has resolved itself into the loss of use of his right foot.

The Workmen's Compensation Act of June 4, 1937, P. L. 1552, *inserted into section 306(c)* the phrase, "for industrial purposes", so that it read: "Permanent loss of the use of a . . . foot . . . for industrial purposes, shall be considered as the equivalent of the loss of such foot . . .". This act became effective January 1, 1938. The Act of June 21, 1939, P. L. 520, removed the phrase, "for industrial purposes", effective July 1, 1939, so that now for over 20 years this phrase has had no proper place in the description of the specific loss.

The correct test to determine whether a claimant is entitled to compensation under section 306(*c*) *is whether the claimant has suffered the permanent loss of the injured member for all practical intents and purposes.* This was the law before the Act of 1937, supra: Conley v. Allegheny County, 131 Pa. Superior Ct. 236. And it has been the law since the Act of 1937 was repealed: Diaz v. Jones & Laughlin Steel Corporation, 155 Pa. Superior Ct. 177, 182; Wildman v. Pennsylvania Department of Highways, 157 Pa. Superior

Ct. 301, 303; Criner v. McKee Glass Company, 162 Pa. Superior Ct. 627, 629; Stachowski v. Incorporated Real Estate Investors, 174 Pa. Superior Ct. 152, 154.

In Curran v. Walter E. Knipe & Sons, Inc., 185 Pa. Superior Ct. 540, supra, at page 547, the Superior Court clarified the distinction in the following language:

"The test to be applied is whether the claimant has suffered 'the permanent loss of use of the injured member for all practical intents and purposes.' This is not the same test as the 'industrial use' test although the two would often bring the same result if applied in particular cases. Generally the 'all practical intents and purposes' test requires a more crippling injury than the 'industrial use' test in order to bring the case under section 306(c), supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes."

The agreement entered into in this case on January 21, 1954, recited that "Dan Corrado suffered a hundred percent loss of *industrial use* of right foot". The Workmen's Compensation Board in its second finding of fact found:

"2. That the claimant sustained the hundred percent loss of *industrial use* of his right foot on January 21, 1954."

No useful purpose would be served by further belaboring the point that this finding of fact is not equivalent to a finding that claimant is entitled to compensation for the loss of use of the foot under section 306(c), nor that he is limited to such compensation.

The second factor in claimant's total disability is that resulting from the damaged disc and its impinge-

ment on the root of the nerve, causing pain down the leg. The board in its opinion said: "The medical testimony in the record indicates that the claimant's disability has resulted *solely* from the loss of use of his right foot, and therefore he is not entitled to additional compensation even though he may be totally disabled because of this injury."

The board's first conclusion of law reads:

"Conclusion of law. 1. The claimant's disability resulted solely from the loss of use of his right foot."

While labeled a conclusion of law this is, in fact, clearly a finding of fact and it does not become a conclusion of law simply because it is given that label. Not only is there not one word of testimony to support it as a finding of fact, but all of the competent evidence, and, in particular, that produced by defendant itself, is precisely to the contrary. If it *were* a valid finding of fact, the conclusion that would necessarily flow from it in this case would be that claimant was in fact entitled to compensation for total disability.

This is true despite the board's third finding of fact, which reads as follows:

"3. That the claimant did not sustain any injury to his right knee, right hip or back as the result of the accident, on April 24, 1952."

The question is not whether he sustained any injury to these members *on* the date of the accident. This would seem to be the board's meaning, otherwise they would have referred to the accident *of* April 24, 1952. Examination of the record shows that somebody, prior to the time this record came to the court, had inserted in ink a comma after the word "accident". Presumably this must have been the board in whose custody the record was prior to its being forwarded to this court.

The board's third finding of fact quoted above is supported by competent evidence. The difficulty with it is that it is meaningless. The law is clear and well settled and, in fact, the court understands this to be conceded by defendant, that the issue is not whether the back was injured on the date of the accident, but whether the impairment of the back results from other injuries which were received on the date of the accident. In Visnic v. Westmoreland Coal Company, 155 Pa. Superior Ct. 199, claimant suffered a comminuted fracture of the right femur on November 6, 1936. On September 14, 1942, defendant petitioned for termination, alleging that claimant's injuries had resolved into the permanent loss of use of his leg payable under section 306(c). For the first time an x-ray examination was made of claimant's back on October 13, 1942, six weeks less than six years after the date of the accident, and it revealed a marked narrowing of the intervertebral disc together with a decalcification of some of the lumbar vertebrae and the lumbosacral joint. The court held that his development resulted from the accident and that claimant was totally disabled.

In Gardner v. Pressed Steel Car Co., 122 Pa. Superior Ct. 592, claimant had received an accidental injury to his left eye, and an open agreement for total disability was entered into. Shortly thereafter it became apparent that the use of the eye had been permanently lost, and a supplemental agreement under section 306(c) was entered into. Subsequently, it developed that claimant had become totally disabled as the result of dementia praecox, and the testimony was that the original injury to the eye "brought down his dementia to the front" so that he was unable to work on account of his mental condition. And an award for total disability was sustained.

If it be true that all of claimant's disability in this particular case resulted solely from the loss of use of his right foot, as the board states in its opinion and finds as a fact in its first conclusion of law, then it would seem to follow as a matter of law that claimant is entitled to compensation for total disability. If the court were convinced that it was the considered opinion of the board that all of claimant's disability resulted solely from the loss of use of his right foot and if we felt free to substitute the words "injury to" for the phrase "the loss of use of", the court would be justified in here entering judgment for plaintiff for total disability. However, the court is not satisfied that this statement represents the considered judgment of the board, and the record must therefore be remanded to the workmen's compensation authorities for further consideration.

Since the record is to be returned to the board, one further word may be added. A person may well suffer the loss of use of a foot and still have other injuries, the effects of which upon his earning power are not yet determined. Under such circumstances an agreement for the loss of use of a foot to secure him payment of maximum compensation, to which he is entitled during the period covered by the specific loss, may well be entered into, leaving the question as to the appraisal of other disability to a later date. This is not infrequently done. Where it is the intent of the parties, on the other hand, to agree that there is no other disability than that covered by the specific loss, the proper language would be for the agreement to recite that all disability resulting from the accident had resolved itself into the permanent loss of use of the foot. That was not done in this case.

It may well have been that this was not the intent of the parties, for claimant testified, and his testimony was not contradicted, that he was told by de-

fendant insurance company's claims manager that at the end of the specified period he would get some money. And this thought receives some added support from the fact that at the end of the 150-week period defendant submitted with the final check a final receipt. A final receipt is not only not necessary in a specific loss case, but its language is clearly improper. It is not necessary for the reason that defendant is entitled to be relieved of the obligation to pay further compensation, not for the reason that all disability has ended, it obviously has not, but for the reason that defendant has paid the maximum compensation for which it is liable under the law.

The language is improper because the final receipt in the form prescribed by article 5 of the Rules of the Workmen's Compensation Bureau recites:

"And I was able to return to work on *(date)* without any disability or loss of earning power due to injuries received in this accident."

Obviously, such language is inapplicable where the only disability is that resulting from a specific loss. Furthermore, section 434 of the act provides that a final receipt may be set aside: ". . . if it be conclusively proved that all disability due to the accident in fact had not terminated." Obviously, in a specific loss case, all disability due to the accident has not terminated. It has only been paid for.

For the reasons hereinbefore set forth, we make the following order.

### Order

The appeal of claimant is sustained. The findings of fact, conclusions of law and order of the Workmen's Compensation Board are vacated and set aside and the record is remanded to the Workmen's Compensation Board for further hearing and determination not inconsistent with this opinion.