Yunker *v.* W. Leechburg S. Co. et al., Appellant.

Argued April 17, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD. PARKER and JAMES, JJ.

*Fred J. Jordan,* and with him *Murray J. Jordan,* for appellant, cited: Riley v. Carnegie Steel Co., 276 Pa. 82; Miller v. Director General R. R., 270 Pa. 330.

*Donald Laird Hankey,* for appellee, cited: Potter v. Claar et al., 289 Pa. 418; Hornetz v. Philadelphia & Reading Coal & Iron Co., 277 Pa. 40; Palmer v. Vesta Coal Co., 6 D. & C. 630.

OPINION BY TREXLER, P. J., July 14, 1933:

Workmen's compensation case. Claimant's husband while at work at defendant company's plant received an injury consisting of a splinter of steel which was embedded under the nail of the middle finger of his left hand, and while in the process of having this splinter of steel removed, on the premises of the defendant company, by the defendant's watchman, who was one of the first aid men, and who had a surgical knife in his hand at the time, the decedent fell over and died instantly. He had a bad heart and hardened arteries. The question before us is whether there was a causal connection between the injury and his death.

There is some question raised as to whether there

is competent testimony to show the man received the injury during the course of his employment. This fact was apparently assumed at the hearing before the referee. The wife, without objection, both parties being represented by counsel, testified that her husband received the injury while at work, that her husband got it at West Leechburg putting up guides, and upon cross-examination by the defendant's attorney, she testified that decedent told her he got it at work in the mill. It would not be very likely that any person would get a steel splinter under his thumb nail in the ordinary activities of life.

At the autopsy, which was performed later, the doctors testified that they found no splinter at the place indicated, but the wife testified that she saw a steel splinter embedded under the finger nail, that the decedent complained of the finger thumping during the night, and that it was beating and red under the nail, and a doctor testified "I noticed it [the splinter] there. I just saw the point of it;" and the first aid man had located the splinter and was about to extract it. The referee had the right to conclude from this testimony, notwithstanding, the testimony of the doctor, who made the autopsy, to the contrary that there was a splinter there.

Coming to the real point in the case, the question is whether assuming that the man was shocked by the appearance of a surgical knife and had the consequent apprehension of its use on his finger, so that he had a fatal heart attack,—is that sufficient to sustain the award in plaintiff's favor? The referee, the board and the court answered that question in the affirmative, and we agree with the conclusion reached.

One of the doctors testified that he believed the accident to the finger was the direct cause of the man's death. If he had not had the splinter in his hand, his death would not have occurred. Another doctor called

by the plaintiff stated that the death was due to cerebral hemorrhage, but as a post mortem disclosed that that was not the cause, his testimony is not of much value. The other doctor called by the plaintiff stated, "Taking the history of the case and all the facts, in my opinion, it [the injury to the finger] was the productive cause of his death." The injury occurred when the splinter entered the finger. The subsequent preparation to remove the splinter was merely a necessary incident to treating the injury and removing the offending particle of foreign substance in the finger.

In Hornetz v. Phila. & Reading C. & I. Co., 277 Pa. 40, 120 A. 662, claimant's husband sustained a fractured index finger and death ensued by reason of administering an anesthetic preparatory to an operation on the injured member. The board held that there was a causal connection between the original injury and the subsequent death. In the case before us the entering of the splinter in the finger of the man was violence to the physical structure of the body and was accidental.

Following the line of reasoning set out in the above case, we conclude that the injury required resort to an operation, the display of a surgical knife and the apprehension of its use produced the shock which caused the heart attack resulting in his death, hence, there was a causal connection between the original violence and the subsequent death.

We cannot improve on the short summary by the lower court. "There is evidence that warrants the conclusion: That decedent, on the premises and in the course of his employment, met with an injury to a finger; that the injury to the finger necessitated the removal of a splinter of steel; that the removal of a steel splinter made necessary a minor operation by the first aid man of the steel company, that the immediate cause of the heart stopping to beat was the fact that

he was about to have the splinter of steel extracted—
that death was due to a nervous (fear, fright, nervous
excitement, pain or fear of pain) over-load on a badly
damaged heart, an over-load, which that particular
heart could not withstand at that given time and that
given place."

The judgment is affirmed. Appellant to pay the
costs.