### Visnic *v.* Westmoreland Coal Company, Appellant.

200

Argued May 1, 1944. Before KELLER, P. J., BALD-

RIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J., absent).

*James Gregg,* of *Portser, Gregg & McConnell,* for appellant.

*A. C. Scales,* of *Scales, Loughran & Shaw,* for appellee.

OPINION BY RENO, J., July 18, 1944:

The claimant in this workmen's compensation case was employed in defendant's mines and was injured by a fall of slate which struck him on the head, back, hips and legs on November 6, 1936. On December 11, 1936, the parties entered an open agreement providing for payments of compensation at the rate of $15 per week for total disability resulting from a fracture of the right femur. Defendant petitioned for termination of the agreement on September 14, 1942, alleging that claimant's injuries had resolved into the permanent loss of his leg, compensable for a period of 215 weeks under §306(c) of the Workmen's Compensation Act of 1915 as amended by the Act of April 13, 1927, P. L. 186, §1, which was the law in effect on the date of the accident, whereas compensation had, by that time, been paid for 298 weeks. In his answer, claimant admitted receipt of compensation, but averred that he was still totally disabled, independently of the loss of the leg, as a re-

sult of injuries to his back and spine. The referee found that, in addition to the loss of the leg, claimant was suffering from a back injury traceable to the 1936 accident and that the latter condition was sufficient, in itself, to render claimant totally disabled. He dismissed the petition to terminate and ordered the continuation of payments under the open agreement. Defendant's appeal to the board was dismissed, and this appeal is from the judgment of the court below affirming the order of the board.

Immediately following the accident claimant was removed to the Westmoreland Hospital, where his principal injury was diagnosed as a comminuted fracture of the right femur. Although claimant complained of a pain in his back, an external examination at that time disclosed no injuries to that region. The lower portion of claimant's body was encased in a cast which remained in place until February, 1937, when it was discovered that no union of the fractured bone fragments had occurred. Claimant was then transferred to the Allegheny General Hospital where he was given orthopedic surgery. He remained in that institution in a cast until November, 1937, when his leg was fitted with a brace and he was returned to his home. Within a few days claimant, contrary to the doctor's instructions, cut the brace because it was uncomfortable, and upon his turning over in bed the injured leg broke again, requiring additional hospitalization. Claimant was confined to the Allegheny General Hospital, again in a cast, from December, 1937, until his discharge in July, 1940. He then remained at home until July, 1941, when the cast was removed. The fractured femur never healed satisfactorily, and the leg was finally amputated close to the hip in October, 1941. The only X-ray examination of claimant's back was made on October 13, 1942, and revealed a marked narrowing of intervertebral discs together with a decalcification of some of the lumbar

vertebrae and the lumbo-sacral joint as a result of osteoporosis.

The competent medical testimony upon which the compensation authorities relied is that claimant's back is in such condition that he would be totally disabled even though both legs were sound. The medical witnesses ascribed the narrowing of the intervertebral discs either to an original injury, or to the prolonged immobility to which claimant was subjected, or to a combination of both these factors, while the decalcification of the vertebrae and the lumbo-sacral joint was attributed to faulty circulation during the long confinement to bed required for the treatment of the fractured femur. The present disability was thus traced to the accidental injury of 1936 and the course of hospitalization which followed, but defendant contends that no infirmity of claimant's back would now exist had he not interfered with the metal brace on his leg in such a manner as to cause a re-fracture necessitating additional treatment and confinement.

Defendant, by filing its petition to terminate the agreed status of total disability, was the moving party and assumed the burden of proving that claimant had permanently lost his leg, which fact is undisputed, and that all claimant's disabilities, caused by the accident, were such as are naturally incident to the loss of a leg: *Lewis v. Bethlehem Mines Corp.*, 140 Pa. Superior Ct. 128, 13 A. 2d 107; *Berkhamer v. Heinsling*, 150 Pa. Superior Ct. 461, 28 A. 2d 807. Otherwise claimant, if totally disabled, would be entitled to compensation under §306(a): *Lente v. Luci*, 275 Pa. 217, 119 A. 132. Disabilities resulting from medical treatment made necessary by an accidental injury in the course of employment can themselves be made the basis of an award of compensation if the chain of causation connecting the injury, the treatment, and the disability is established: *Rigney v. Snellenburg & Co.*, 90 Pa. Superior

Ct. 237. See also *Hornetz v. Philadelphia & Reading Coal & Iron Co.*, 277 Pa. 40, 120 A. 662; *Yunker v. W. Leechburg S. Co.*, 109 Pa. Superior Ct. 220, 167 A. 443; *Flowers v. Canuso & Son*, 115 Pa. Superior Ct. 234, 175 A. 287, cases where treatment reacted unfavorably on a pre-existing physical condition.

As the compensation authorities have determined that claimant's back injuries resulting from the accident are severe enough to disable him totally, regardless of the leg amputation, the sole questions of law presented by this appeal are whether there is substantial competent evidence to support the findings of fact, and whether the law has been correctly applied to the facts as found. It is not our duty to reconcile conflicting medical testimony nor to review as a matter of law the credibility of medical witnesses: *Puzio v. Susquehanna Collieries Co.*, 126 Pa. Superior Ct. 488, 191 A. 222; *Matchouski v. Pittsburgh Terminal Coal Corp.*, 146 Pa. Superior Ct. 201, 22 A. 2d 114; *Ludwig v. Union Collieries Co.*, 147 Pa. Superior Ct. 247, 24 A. 2d 581. The testimony of claimant's doctors, summarized above, meets the requirements of the rule of *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256, and is clearly adequate to support the factual conclusions of the referee and the board.

Defendant has strongly urged that compensation should be denied under §306(e) of the Workmen's Compensation Act of 1915, which provided: " . . . . . . If the employe shall refuse reasonable surgical, medical and hospital services, medicines, and supplies, tendered to him by his employer, he shall forfeit all right to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal." This section was re-enacted intact by the Act of 1927, supra, was modified by the Act of June 4, 1937, P. L. 1552, §1, and was substantially restored by §306(f) of the Act of June 21, 1939, P. L. 520, 77 PS §531.

This provision undoubtedly operates against an employe who deliberately interferes with the necessary and proper medical appliances furnished him by his employer's physican, as well as against an employe who refuses, in the first instance, to permit the application of corrective devices reasonably required for an adequate treatment of the injuries sustained. In either case the retarding effect on the employe's recovery is identical, and it would be but a mere whim to reduce or withhold compensation from a workman if he declined to allow a brace, for example, to be fastened to an injured leg, but to allow him full disability compensation if he permitted the application of the brace only immediately thereafter to remove it and, as a consequence, aggravate his injury. It is plain that the purpose of the legislature in enacting this section was to protect employers from liability for incapacity or increases in incapacity, shown to have resulted from an unwarranted refusal of, or interference with, the medical and surgical treatment reasonably required by the nature of the employe's injuries: *Neary v. Philadelphia Coal & Iron Co.,* 264 Pa. 221, 107 A. 696, affirming *Neary v. Philadelphia & Reading Coal & Iron Co.,* 69 Pa. Superior Ct. 562. To the extent that the incapacity is caused or increased by the employe's unjustifiable interference with a reasonable course of treatment, the employer is absolved from the obligation to provide compensation for the disability attributable to such interference: *Hanyok v. Pa. Coal and Coke Corp.,* 155 Pa. Superior Ct. 194, 38 A. 2d 537.

This rule, however, imposes upon the employer the burden of proving, not only that the employe interfered with the medication or appliances furnished him, but also that, and the extent to which, the interference was the cause of disability: *Parlovich v. Philadelphia & Reading Coal & Iron Co.,* 76 Pa. Superior Ct. 86; *O'Toole v. Hughes-Foulkrod Co.,* 113 Pa. Superior Ct.

292, 173 A. 703. Defendant failed utterly to meet this burden. The only doctor who testified for it on this branch of the case stated in response to interrogation by defendant's counsel that in his professional opinion the second *break* would not have occurred had not claimant tampered with the brace, but the witness evaded a direct question relating to the effect of the second break on the present *disability*, and the matter was not pressed further. Whether the back ailments would have developed during the period of hospitalization necessary for the complete recovery of the original fracture was not established. Testimony thus essentially incomplete, even if credible, will not discharge a burden of proof. Furthermore, "Where the decision of the board is against the party having the burden of proof ...... bearing in mind that a trier of fact is not *required* to accept even uncontradicted testimony as true (*District of Columbia's Appeal*, 343 Pa. 65, 79, 21 A. 2d 883, 890) the question before the court is whether the board's findings of fact are consistent with each other and with its conclusions of law and its order, and can be sustained without a capricious disregard of the competent evidence. Unless the answer is in the negative, the order must be affirmed": *Walsh v. Penn Anthracite Mining Co.*, 147 Pa. Superior Ct. 328, 333, 24 A. 2d 51.

Judgment affirmed.