Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Rose L. Norman, Widow of Peter Norman *v.* A. R. Bar, Inc. and Westmoreland Casualty Company, Insurance Carrier, Appellants.

610

Argued December 4, 1975, before Judges KRAMER, WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Earl T. Britt,* with him *Duane, Morris & Heckscher,* for appellants.

*Sylvan D. Einhorn,* with him *Winer and Einhorn, P.C.,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE ROGERS, January 12, 1976:

A. R. Bar, Inc., an employer, and its insurance carrier have appealed from an order of the Workmen's Compensation Appeal Board affirming a referee's decision granting benefits to the widow of Peter Norman.

Mr. Norman was employed as a janitor at A. R. Bar, Inc.'s bar and night club at a salary of $50 per week. On April 14, 1969, a case of beer fell and injured his right foot. Mr. Norman consulted Dr. Jacob Levin on April 24, 1969. Dr. Levin then ascertained, as he later testified at the referee's hearing, that Mr. Norman was diabetic, that his injured foot was infected, and that he complained of nausea, vertigo, insomnia and pain. Dr. Levin treated the foot, and administered medication, including increased dosages of insulin. The decedent continued his visits to and treatment by Dr. Levin until May 17, 1969, after which date, contrary to the doctor's advice, he discontinued visiting the doctor and returned to work. Mr. Norman again consulted Dr. Levin on July 1, 1969. The doctor found that the decedent's foot was turning dark, thus evidencing the "beginning of gangrene" and that the decedent was generally ill. Dr. Levin had the decedent admitted to a hospital under the care of a surgeon and an internist. Mr. Norman died on July 11, 1969. The official death certificate listed the causes of death as hepatorenal failure and hemorrhage due to advanced cirrhosis, diabetes mellitus and uremia.

The claimant had the burden of proving that her husband's death was causally related to his injury at work. Since she prevailed below, we must affirm unless we conclude that constitutional rights were violated, the law was erroneously applied or the findings of fact are not supported by substantial evidence. *Workmen's Compensation Appeal Board and Barta v. Envelope Manufacturing Association,* 18 Pa. Commonwealth Ct. 111, 334 A.2d 318 (1975).

The appellants advance two grounds for overturning the Board's decision: the first, that the referee's finding

that Mr. Norman's death was caused by the injury to his foot is not supported by the evidence, and the second, that the Board erred in not denying compensation by reason of the decedent's failure, after May 17, 1969 and until July 1, 1969, to comply with his doctor's instructions not to return to work and to continue in the doctor's care.

Dr. Levin testified that on July 1, 1969, Mr. Norman's foot was infected and had the appearance of the beginning of a gangrenous condition, and that the injury to the foot had thrown his "whole diabetic control out of wack." It was his opinion that Mr. Norman would have lived "a good many more years if he had not had the accident." The appellants' medical witness, who testified from medical reports, testified that Mr. Norman's foot was not infected or gangrenous at the time of death and that the accident of April 14, 1969 did not contribute to his demise. An impartial medical witness offered the opinion that the injury was an aggravating causative factor that led to Mr. Norman's death, but that it was not the primary cause of death. The appellants say that the opinions of Dr. Levin and the impartial medical witness were based on a mere supposition that Mr. Norman's foot was gangrenous and that this was an unsubstantial basis for their conclusion that the death was hastened by the injury. The fallacy with the appellants' argument is that Dr. Levin did not base his opinion solely on the presence of gangrene. It is clear that the decedent's foot was badly infected. Dr. Levin testified that the injury, whether or not gangrenous, aggravated the decedent's diabetes and led to the primary cause of death. This was substantial evidence supporting the referee's finding on causation and we may not disturb the finding merely because another expert testified to the contrary. *Weaver v. Workmen's Compensation Appeal Board*, 15 Pa. Commonwealth Ct. 292, 325 A.2d 673 (1974).

The appellants' second argument is based on Section 306(f) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S.

§531, which at the time applicable provided in part as follows:

> "If the employee shall refuse reasonable services rendered by duly licensed practitioners of the healing arts ... tendered to him by his employer, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal."

The contention is that Section 306(f) requires that benefits be denied because Mr. Norman returned to work and failed to consult with his own doctor after May 17, 1969 and until July 1, 1969. The fatal flaw in the thesis is that employer did not tender Dr. Levin's services; they were obtained by the decedent. Therefore, Section 306(f) has no application. *Bird v. Brown,* 157 Pa. Superior Ct. 49, 41 A.2d 881 (1949). The appellants' brief seems to assert that it has been held that a claimant's refusal to cooperate with his own physician works the forfeiture provided by Section 306(f). The cases cited for this proposition, *Zbieg v. Rochester & Pittsburgh Coal Company,* 175 Pa. Superior Ct. 308, 104 A.2d 158 (1954), and *Visnic v. Westmoreland Coal Company,* 155 Pa. Superior Ct. 199, 38 A.2d 539 (1944), do not support it. In neither case does it appear that the medical services assertedly refused were other than those tendered by the employer.

## ORDER

AND NOW, this 12th day of January, 1976, it is ordered that:

1. The Commonwealth of Pennsylvania, Department of Labor and Industry pay to Dr. Harry Shubin, 1829 Pine Street, Philadelphia, Pa., the sum of $140.00 for his services as an impartial medical witness; and

2. Defendant pay compensation to Claimant at the rate of $25.50 per week commencing July 11, 1969 and for the duration of her widowhood, together with interest on all deferred payment of compensation.

Commonwealth of Pennsylvania, Department of Public Welfare, Plaintiff *v.* Ludlow Clinical Laboratories, Inc., Leonard Edelman and Joseph C. Mogil, Defendants.

Argued December 4, 1975, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Lawrence Silver,* Deputy Attorney General, with him *Robert P. Kane,* Attorney General, for plaintiff.

*Harold Gondelman,* with him *Ralph D. Tive, Philip Baskin,* and *Baskin, Boreman & Tive,* for defendants.

OPINION BY JUDGE ROGERS, January 12, 1976:

The Commonwealth of Pennsylvania, Department of Public Welfare, has filed a complaint in assumpsit and trespass against Ludlow Clinical Laboratories, Inc., Leonard Edelman and Joseph C. Mogil.

Count I of the Complaint, in assumpsit, alleges that the corporate defendant, of whom the individual defendants are officers, was approved by the United States Department of Health, Education and Welfare and by the Pennsylvania Department of Welfare to provide medical laboratory services for eligible recipients under Federal and State programs authorized by the Social Security Act; that as a participant in the State program the plaintiff was required to charge its customers, eligible recipients under the State program, the same amounts as it charged its private customers; that Ludlow overbilled the plaintiff $2,365,470.62 for services allegedly performed from February 1, 1973 to November 30, 1974; that the plaintiff holds unpaid invoices from Ludlow in the amount of $1,063,891.18 for the period August 15, 1974 through November 30, 1974; and that there is therefore due the plaintiff the sum of the difference, $1,301,-579.44, for which judgment against Ludlow is demanded.

Count II of the Complaint, also in assumpsit, alleges that Ludlow by fraudulently altering age records submitted fraudulent invoices amounting to $43,263.50 for services to certain customers eligible for both Medicare and the State's Medical Assistance program to the plaintiff; that these invoices had been paid by the State; and that there is therefore due the plaintiff the sum of $43,263.50 for which judgment is demanded.

Counts III and IV, in trespass, allege that the individual defendants, with fraudulent intent, submitted the false and fraudulent invoices described in Counts I and II and demand judgment against them in the same amounts as claimed against Ludlow in Counts I and II.

The defendants have filed an Answer and New Matter, denying on behalf of Ludlow the irregularities alleged in Counts I and II of the Complaint and on behalf of the individual defendants the fraudulent conduct described in Counts III and IV. Under the heading New Matter the defendants claim to be owed the sum of $1,063,891.18 on the unpaid invoices held by the plaintiff, the sum of $323,394.50 on unpaid invoices for the period December 1, 1974 through January 10, 1975, and the sum of $34,630.88 for invoices submitted to the United States, but rejected. The defendants demand judgment against the Commonwealth in the sum of $1,421,916.56.

The Commonwealth, Department of Public Welfare, has filed preliminary objections to the defendants' Answer and New Matter, (1) raising a question of our jurisdiction to consider the defendants' claim; (2) a motion to strike for a defect in the verification of the Answer and New Matter and because the defendants' claim is not made under the heading "Counterclaim" as required by Rule of Civil Procedure 1031(a); and (3) a motion for a more specific pleading because of the alleged unintelligibility of a paragraph of the New Matter and because the defendants' pleading does not specify whether their claim is in the nature of a counterclaim, set off or recoupment.

The defendants have not, it is true, set forth their cause of action or claim for the sum of $1,421,916.56 under the heading "Counterclaim." It is clear, however, that they intend their claim to be so treated. Their Answer asserts that by suing them the Commonwealth has waived its sovereign immunity; they demand judgment in the full amount of their claim, which exceeds the Commonwealth's by some $77,000; their counsel at argument asserted that the defendants seek and hope to obtain a money judgment in this court.

The case of *Commonwealth v. Orsatti, Inc.*, 448 Pa. 72, 292 A.2d 313 (1972) is directly in point and controlling.

There the Commonwealth sued Orsatti in the Court of Common Pleas of Dauphin County alleging the breach of leases and seeking $15,183.19 in damages. Orsatti filed a complaint with the Board of Arbitration of Claims claiming the amount of $48,393.25 for asserted breaches by the Commonwealth of the same leases.[1] This complaint was dismissed as untimely filed. Orsatti then filed an Answer, New Matter and counterclaim to the Commonwealth's suit in common pleas. The counterclaim was identical to the claim filed and dismissed by the Board of Arbitration of Claims. The Commonwealth filed preliminary objections to Orsatti's New Matter and counterclaim. Rather than paraphrase the Supreme Court's holding, we provide the following extensive, but wholly pertinent, quotation from Justice O'BRIEN'S opinion:

> "We come then to the question of whether the Commonwealth's preliminary objections to the counterclaim should have been sustained. The Commonwealth of Pennsylvania is a sovereign state, and as such is immune from suit unless it gives its consent. Conrad v. Commonwealth, 441 Pa. 530, 272 A.2d 470 (1971). Article I, Section 11 of the Pennsylvania Constitution empowers the Legislature to give the consent of the Commonwealth to suit by providing: 'Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.' The Legislature exercised this power by its enactment of the Act of May 20, 1937, P.L. 728, 72 P.S. §4651-1 et seq., which established the Board of Arbitration of Claims with: '. . . jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.'

---

72 P.S. §4651-4. The jurisdiction conferred therein was exclusive. See Kaufman v. Holcomb, 357 Pa. 514, 55 A.2d 534 (1947). Since the Commonwealth, as a sovereign, can only be sued by its consent, and since its consent for contractual suits has been conditioned on the claimant's use of the Board of Arbitration of Claims, Orsatti may only establish the full counterclaim before the Board of Arbitration of Claims. Since the Board has already dismissed Orsatti's claim, for failure to comply with the time limits established by the Legislature in its conditional granting of consent to be sued, 72 P.S. §4651-6, and since the court does not have jurisdiction to consider the whole of appellant's counterclaim, the court was correct when it sustained the Commonwealth's preliminary objections on the theory of Commonwealth v. Berks County, supra. [364 Pa. 447, 72 A.2d 129 (1950)].