United Industrial Maintenance and Westmoreland Casualty Company, Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and David W. Kimmick, Respondents.

Argued May 7, 1979, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*H. Reginald Belden,* with him *Stewart, Belden, Sensenich & Herrington,* for petitioners.

*C. S. Fossee,* with him *Murovich, Reale and Fossee,* for respondents.

OPINION BY JUDGE CRUMLISH, JR., September 21, 1979:

Westmoreland Casualty Company (Westmoreland), insurance carrier for United Industrial Maintenance (United Industrial), appeals an order of the Workmen's Compensation Appeal Board (Board) that it is chargeable for payment of compensation to David W. Kimmick.

Kimmick was employed by United Industrial on October 27, 1972, when he sustained a left femural fracture, falling approximately 87 feet in a work-related accident. An intermedullary rod was surgically implanted in his leg. At the time of the accident, his employer's insurer, Rockwood Insurance Company (Rockwood) paid Kimmick $94.00 weekly compensation until March 25, 1973, when he returned to work. On December 5, 1973, he underwent surgery for the removal of the rod. Rockwood resumed compensation payments until Kimmick's return to work on January 20, 1974. On January 29 Kimmick, in another work-related accident, fractured his right ankle, and Rockwood paid him compensation until March 3, 1974. On March 4, 1974, Kimmick again returned to work as a general laborer and signed a final receipt of compensation.

Rockwood, on March 15, 1974, cancelled United Industrial's coverage and Westmoreland assumed liability coverage from March 16, 1974.

In May, 1974, Kimmick sustained a ligamentous tear and other injuries to his left knee when his knee "popped" as he jumped several feet from a tugger hoist.[1] He continued to work without wage loss though with considerable pain until August 6, 1974, when his physician prescribed further surgery because of the severity of his knee problem. Thereafter he did not work until February 21, 1976, when he began to work part-time as an apprentice beautician.

The referee, after hearing two orthopedic surgeons testify, attributed Kimmick's periods of total disability to his 1972 fall of 87 feet, granted his petition to set aside the final receipt,[2] and held Rockwood exclusively liable for all payments of compensation to Kimmick.[3]

Rockwood appealed to the Board which purported to adopt the referee's factual findings but held that the findings ineluctably led to the conclusion that the May, 1974 incident resulted in an aggravation of a pre-existing condition, a separate compensable injury under Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act),[4] 77 P.S. §411. Accordingly, the Board concluded that Westmoreland, as United Industrial's insurance carrier on the date of the second compensable injury, was exclusively liable.

---

[1] Kimmick testified that the tugger was being used for the purpose of raising steel beams off the ground to construct a new roof.

[2] Kimmick had originally filed a petition to set aside final receipt he had signed in 1974 after his return to work. The referee, noting that his petition to set aside final receipt on its face denoted two falling incidents, allowed him to amend the petition to allege a second injury, thereby involving Westmoreland as a party defendant.

[3] The referee also ordered Rockwood to reimburse Westmoreland for the interim payments he had ordered Westmoreland to make in an interlocutory order.

[4] Section 301(c) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §411.

Westmoreland now appeals to us, contending that the Board exceeded its authority in reversing the referee and that the Board has misread the referee's findings. We agree with Westmoreland and reverse the Board.

Initially, we observe that the Board, as do all components of the administrative process, serves a limited function. The referee remains the arbiter who weighs credibility of witnesses and considers the respective merit of conflicting testimony including medical testimony. The Board may not disregard the referee's findings where they are supported by substantial evidence and may substitute its own findings only where it takes additional evidence. Section 423 of the Act, 77 P.S. §854. *See also Jones v. Workmen's Compensation Appeal Board,* 25 Pa. Commonwealth Ct. 546, 360 A.2d 821 (1976); *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973).

The Board correctly states the law: an aggravation of a pre-existing condition constitutes an "injury" under Section 301(c) entitling one to compensation "regardless of prior physical condition."

That an employee has a chronic condition or ailment which makes him more susceptible to injury does not defeat his right to compensation if the subsequent injury materially contributes to the acceleration or aggravation of his pre-existing chronic condition. *See Duquesne Light Co. v. Battisti,* 44 Pa. Commonwealth Ct. 350, 403 A.2d 1352 (1979) *see also Workmen's Compensation Appeal Board v. A.R. Bar, Inc.,* 22 Pa. Commonwealth Ct. 609, 349 A.2d 805 (1976).

In *Pittsburgh Outdoor Advertising Co. v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 338, 395 A.2d 648 (1978), an employee sustained two separate work-related injuries; he had fall-

en in 1970 and injured both heels, returned to work and fell again in 1973, sustaining a back injury. The medical testimony recorded that the combination of the two injuries, though neither by itself totally disabling, contributed to the employee's resultant total disability. There, the insurance carrier of record at the time of the second accident was charged with the liability for paying total disability compensation.

Whether or not Kimmick's 1974 jump from the tugger hoist which resulted in his banging his knee against a sloped roof surface materially caused his subsequent total disability is a question of fact to be determined by the factfinder. *Burke v. Baldwin-Lima-Hamilton Corp.*, 211 Pa. Superior Ct. 1, 233 A.2d 589 (1967).

On this issue, the referee made the following findings which accurately summarize the medical testimony adduced:

NINE: That it was the medical opinion of Dr. McMaster . . . that he was unable to testify with any degree of reasonable medical certainty that the injury to the left knee was attributable to a second injury having occurred on May 21, 1974, or whether the trauma to the left knee on May 21, 1974 resulted from a preexisting injury to the left knee on October 27, 1972, when the Claimant fell 87 feet fracturing his left femur; the doctor's opinion was that both traumas affect this Claimant's left leg but that reasonable causation cannot be supplied to determine which of the two occurrences are responsible for the present condition.

TEN: That Dr. David E. Foss was of the opinion that the subsequent trauma which occurred when the Claimant jumped several feet from a tugger hoist to a roof on May 21, 1974,

did not appear adequate to have produced a torn right medial meniscus, right medial collateral ligament, posterior cruciate and a posterior medial joing [sic] capsule injury, but that these injuries were directly attributable to the original accident of October 27, 1972, and that all of Claimant's present problems with his left leg were attributable to the injury of October 27, 1972.

. . . .

TWELVE: That from all the evidence of record, your Referee finds as a fact that Claimant was totally disabled from August 7, 1974, to and including February 21, 1976, from and directly as a result of the injuries he sustained to his left leg on October 27, 1972, and that the disability period from May 21, 1974 to August 7, 1974 and periods thereafter were aggravations of a preexisting condition in the left knee which resulted directly from the fall of October 27, 1972. . . .

Although some confusion as to the referee's finding is understandable because of his use of the phrase "aggravation of a preexisting [sic] condition" in Finding 12, his findings read in their entirety clearly indicate his belief that Kimmick's disability resulted directly from his 87-foot fall in 1972 and that the relatively minor 1974 incident did not materially contribute to Kimmick's deteriorating condition so as to constitute a separate compensable injury for the purposes of this contest between two insurance carriers. Support for this finding is provided by Dr. David E. Foss's testimony that "hidden" knee damage, undetectable by x-rays, often accompanies femoral fractures, and by Kimmick's testimony that he had experienced some stiffness and pain in his knee after his

fracture and that his knee had "popped" prior to his jump from the tugger hoist.

Accordingly, we

ORDER

AND Now, this 21st day of September, 1979, the order of the Workmen's Compensation Appeal Board in the above captioned case dated May 4, 1978, is reversed, and the award of the referee therein, dated May 5, 1977, is reinstated.

United Industrial Maintenance and/or Rockwood Insurance Company is hereby ordered to pay compensation to Claimant David N. Kimmick at the rate of $94.00 per week from August 7, 1974 to February 20, 1976, inclusive, and a suspension of compensation benefits from February 21, 1976, so long as he suffers from a residual disability, while working, from the injury of October 27, 1972.

Rockwood Insurance Company shall reimburse to Westmoreland Casualty Company, in a lump sum plus interest paid, the compensation paid by Westmoreland Casualty at the rate of $47.00 per week between August 7, 1974 and August 7, 1975, and Westmoreland Casualty Company is released from any and all liability in this case.

United Industrial Maintenance and/or Westmoreland Casualty Company are hereby directed to pay Kimmick's medical expenses which are related to the accident of October 27, 1972, as they arise.

Kimmick is to pay his attorney 20% of compensation awarded hereunder.

Interest at the rate of 10% per annum is payable on all deferred installments of compensation.