Ingersoll Rand Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Terry L. Brown, Respondents. Pennsylvania Manufacturers' Association Insurance Company, Intervenor.

508

Argued September 18, 1981, before Judges ROGERS, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*Paul A. Barrett,* of *Nogi, O'Malley & Harris, P.C.,* for petitioner.

*Robert J. Beirne, Beirne & Barrett,* for respondent, Terry L. Brown.

*John W. Schmitthenner,* of *Epstein & Schmittenner,* for intervenor.

OPINION BY JUDGE WILLIAMS, JR., November 19, 1981:

The question presented by this workmen's compensation case is who, as between employer Ingersoll Rand Company (Ingersoll) and its former insurance carrier, must bear liability for specific loss benefits to Terry Lee Brown, the claimant below. When the Workmen's Compensation Appeal Board (Board) affirmed a referee's decision that Ingersoll was liable, the employer appealed to this Court.

In December 1977, Terry Lee Brown (claimant) filed a claim petition against Ingersoll, alleging that he had lost the use of his left hand as the result of an August 1977 work injury. In the instant appeal it is uncontested that the claimant lost the use of his hand to a degree and in a manner entitling him to specific loss benefits. The loss of use was ascertained after the second of two adverse incidents concerning the claimant's left hand. Both incidents, one in 1973 and the other in August 1977, occurred in the course of claimant's employment with Ingersoll. However, at the time of the first incident Ingersoll was insured by the Pennsylvania Manufacturers' Association Insurance Company (PMA); and, at the time of the second incident, Ingersoll was self-insured.

Ingersoll here challenges the referee's finding that the claimant's loss of use of the left hand was caused by the second adverse incident, as distinguished from the first. In that regard, Ingersoll argues that the referee's finding was not only unsupported by substantial evidence, but was also in capricious disregard of competent medical testimony from the claimant's own physician.

On May 21, 1973, the claimant was working for Ingersoll as a machinist. On that date, while he was operating a band saw, the claimant's left hand was caught under the blades of the saw and severely cut. The hand was cut almost entirely through; but medical procedures were successful in sewing it together. As a result of this injury the claimant was unable to work for 15½ weeks, for which he received workmen's compensation benefits from PMA. He returned to full-time work with Ingersoll on September 10, 1973.

Concerning the condition of his hand after returning to work in 1973, the claimant testified in the instant matter as follows: He was able to use his left hand, but it was not the same as before the accident

with the saw. He was able to grasp things with the hand and to lift objects weighing up to 25 pounds. Upon resuming employment in September 1973, he worked with machinery similar to that he used prior to the accident, but which had smaller parts. He continued to work with such machinery until the second adverse incident, in August 1977; and during that interval he missed only 5 days of work because of his hand. The claimant also testified that prior to the second incident he considered his left hand to be "quite strong", although cold weather made the hand painful.

On August 29, 1977, the claimant suffered a fracture of his left hand, while lifting a 25 pound object from a machine. The claimant further described that incident as follows: While he was attempting to lift the object it began to slip from the machine, causing him to grasp the object with both hands. In the course of grasping it, the fingers on claimant's left hand became hyperextended at the metacarpal joints. As a result, the fourth metacarpal head on the left hand was fractured. According to the claimant, his left hand failed to bear the weight of the slipping object; and, he attributed that weakness to the 1973 injury.

The claimant further testified that after he fractured his left hand in August 1977, he could not grasp anything with that hand or hold anything with it weighing more than a pound. Nor, according to the claimant, was he able to grip an object such as a screwdriver or a hammer with his left hand. After the second injury to the claimant's left hand, Ingersoll gave him a job screening parts and sweeping floors.[1]

The sole medical witness to testify in this case was Dr. Albert Murtland, an orthopedic surgeon, who

---

[1] The referee found that this job, at a reduced salary, did not require claimant to use his left hand.

treated the claimant for the 1977 hand fracture. Dr. Murtland had also examined the claimant in December 1974, in connection with the first injury. Based on his examination of the claimant after the second injury, Dr. Murtland was of the opinion that the claimant had sustained a 40% degree of anatomical disability in the left hand, and that this meant the hand was useless for industrial purposes. The doctor added, however, that in his opinion the claimant's level of disability pre-existed the second injury; and was of that same level or degree after the first injury, in 1973. Dr. Murtland advanced the further opinion that the claimant's loss of use of the left hand was due to the 1973 injury, and that the second injury made but slight or minimal contribution to the disability. At one point in his testimony, this witness described the second injury as an "aggravation" of the earlier one.

Dr. Murtland had been called as a witness for the claimant to establish the nature of the second injury and the extent of disability. However, the doctor's opinions about the extent of disability and its cause were, for the most part, developed during his cross-examination by counsel for Ingersoll and PMA.

Notwithstanding Dr. Murtland's testimonial opinion that the claimant's hand had the same level of disability after each injury, there are elements in the doctor's own testimony that detract from his opinion in that regard. As already noted, the doctor, in December 1974, had examined the claimant in connection with the first injury; that examination took place about 15 months after the claimant had returned to work from the saw accident. The December 1974 examination revealed numerous calluses on the claimant's left hand, a fact which the doctor interpreted as evidence of recent use of the hand. At that time, the doctor determined that the power in the left hand was "excellent" and its circulation adequate. During cross-

examination, Dr. Murtland admitted that as a result of the 1974 medical examination he had issued a report stating the hand was "excellent" and had a disability level of *only 10%*. Also on cross-examination, the doctor stated a belief that, except for the August 1977 injury, the claimant could have continued working using his left hand as he did prior to that second injury.

In addition to calling the second injury an "aggravation" of the first, Dr. Murtland stated that the first injury predisposed the claimant to the second injury. Then, at another point in his testimony, the doctor agreed that the second injury was a "new injury superimposed over an old injury."

This Court has embraced the principle that if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident that does not contribute materially to the disability, then the intervening incident does not create a separately compensable injury for purposes of a contest between two insurers. *City of Williamsport v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 618, 423 A.2d 817 (1980); *United Industrial Maintenance v. Workmen's Compensation Appeal Board,* 46 Pa. Commonwealth Ct. 156, 405 A.2d 1360 (1979). Whether or not the intervening incident caused or materially contributed to the disability is a question of fact to be determined by the referee. *City of Williamsport; United Industrial Maintenance.*

Questions of evidentiary weight and credibility are strictly for the referee to decide. *E.g., Owens v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 510, 395 A.2d 1032 (1979). It is for the referee to decide which of conflicting or inconsistent testimony to accept; and this applies whether the inconsistency arises between two witnesses or in the

testimony of a given witness. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board*, 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977). Having assessed the credibility of the evidence, the referee may accept or reject the testimony of any witness in whole or in part. *Id.*

The claimant's work history after returning to work from the first injury afforded a strong basis for inferring that the level of disability, in his left hand, was not the same after that injury as it was after the second. After resuming work following the first injury, the claimant continued to work for almost 4 years with machinery similar to that he used before the first injury; and, during that four-year time, he missed only 5 days from work because of his hand. This work history, in addition to the claimant's own testimonial description of his hand capacity prior to the second injury, clearly supports a conclusion that claimant had not lost the use of the hand *prior* to the second injury.[2]

Accordingly, there is substantial evidence to support the referee's finding that it was the second injury, of August 1977, that caused the claimant to lose the use of his left hand for industrial purposes. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Republic Steel Corp. v. Workmen's Compensation Appeal Board*, 492 Pa. 1, 421 A.2d 1060 (1980). In our view, the evidence of the claimant's work history after resuming work in 1973, and his description of his hand capacity during the period preceding the second injury, was evidence that the referee could reasonably accept in reaching his conclusion.

---

[2] A referee may attach greater weight to a claimant's testimony than to the testimony of the claimant's treating physician. *See George v. Workmen's Compensation Appeal Board*, 39 Pa. Commonwealth Ct. 16, 394 A.2d 1080 (1978).

As a further matter, it was within the referee's province to accept or reject Dr. Murtland's opinion, that the second injury did not significantly contribute to the claimant's loss of use of his left hand. In the face of the claimant's pre-August 1977 work history, the rejection of the doctor's opinion cannot be deemed a capricious disregard of evidence.

For the reasons set forth, we affirm the Board's order.

ORDER

AND Now, the 19th day of November, 1981, the Order of the Workmen's Compensation Appeal Board at Docket No. A-77521, the above matter, is hereby affirmed.

Ingersoll Rand Company is directed to pay to claimant Terry L. Brown compensation at the rate of $177.33 per week for the total loss of use of his left hand. The said payments shall be for a period of 350 weeks commencing August 29, 1977.

Interest on deferred installments of compensation shall be at the rate of ten percent (10%) per annum.

Counsel fees in the amount of twenty percent (20%) shall be paid to Robert J. Beirne, Esquire, P.O. Box 87, Athens, Pennsylvania 18810.